Exhibit D

# TRADEMARK LICENSE AGREEMENT

This Trademark License Agreement (the "Agreement") is entered into as of December 20, 2016 (the "Effective Date") by and between ML Finance LLC, a Delaware limited liability company ("Licensor"), and Bowery Kitchen Supplies, Inc., a New York corporation ("Licensee") (collectively, the "Parties").

WHEREAS, Licensor owns the trademarks and applications and/or registrations therefor identified on Schedule A (which may be updated from time to time by agreement of the Parties) (the "Licensed Marks"), together with all of the goodwill associated therewith; and

WHEREAS, Licensee operates a store located in Chelsea Market at 88 10th Avenue, New York, New York 10011 (the "Location") where it offers various goods and services related to kitchenware (the "Goods and Services");

WHEREAS, Licensee desires a license to use the Licensed Marks to sell and provide the Goods and Services, subject to all of the terms and conditions of this Agreement; and

WHEREAS, Licensor wishes to grant Licensee a nonexclusive, non-sublicenseable, royalty-free license to use the Licensed Marks to sell and provide the Goods and Services, subject to all of the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. <u>Grant of Rights</u>. Subject to the obligations and conditions contained in this Agreement, Licensor hereby grants to Licensee, and Licensee hereby accepts, the non-exclusive, non-sublicenseable right and license to use the Licensed Marks:

    (a) in connection with the store at the Location;

    (b) in connection with stores owned and operated by Licensee offering the Goods and Services in Amsterdam, the Netherlands; Brooklyn, New York; the North Shore of Long Island, New York; and Miami, Florida (the "Territories"); and

    (c) in connection with advertising and promotion of the Goods and Services in the Territories, consistent with such practices and materials as approved by Licensor.

2. <u>Ownership</u>.

    2.1 Licensee recognizes Licensor's exclusive title in and to the Licensed Marks and the validity thereof. Licensee shall not in any way, during or after the term of this Agreement:

(a) dispute or impugn such title or the validity of any of the Licensed Marks or any registrations therefor or the right of Licensor to use any of the Licensed Marks;

(b) file any applications for registration of any of the Licensed Marks or any similar marks in the United States Patent and Trademark Office, any state or foreign country, or adopt or use, without Licensor's express prior written consent, any word or mark which is likely to be similar to or confused with any of the Licensed Marks. Licensee acknowledges and agrees that any violation of this provision shall result in automatic assignment of any such applications, registrations or other rights to Licensor at Licensee's expense, and that Licensee shall sign any documents requested by Licensor for such purpose;

(c) use or apply to register any of the Licensed Marks, or any name containing or confusingly similar to any of the Licensed Marks, as a domain name, social media profile name, or any other designation of source, during or after the Term. However, nothing in this provision shall be construed to prevent Licensee from maintaining a website at www.bowerykitchens.com, provided that such website advertises only goods and services provided by Licensee. Licensee acknowledges and agrees that any violation of this provision shall result in automatic assignment of any such applications, registrations or other rights to Licensor at Licensee's expense, and that Licensee shall sign any documents requested by Licensor for such purpose; or

(d) otherwise do or permit to be done any act or thing that may in any way impair the right of Licensor in and to any of the Licensed Marks or any applications or registrations therefor, or that may tarnish or damage the reputation or value of the Licensed Marks at any time during or after the Term (as defined herein), or that could otherwise impair or adversely affect the goodwill associated with any of the Licensed Marks at any time during or after the Term.

2.2     Licensee shall obtain no right, title or interest in or to any of the Licensed Marks, or in any trademark or service mark registration or application therefor, or in any other trademark or service mark of Licensor, by reason of this Agreement or the License, except the limited right to use the Licensed Marks at the Location and in the Territories as provided in this Agreement. All uses of the Licensed Marks by Licensee, and all goodwill associated therewith, shall inure to the benefit of Licensor and its successors and assigns. Nothing in this Agreement restricts Licensor's right to sell, assign or license the Licensed Marks or any of its other trademarks or service marks, or any registration or application for registration thereof.

2.3     Licensee shall not use the Licensed Marks in any manner not expressly permitted by this Agreement. Licensor shall use the Licensed Marks only at the Location or in the Territories. Licensor retains the exclusive right to use the Licensed Marks outside of the Location and the Territories. Licensee shall only use the Licensed Marks on or in connection with goods, services or promotional materials approved by Licensor, in the format(s) approved by Licensor, in Licensor's sole discretion. Licensee agrees not to adopt or use any mark other than the Licensed Marks, including other marks used by Licensor, without the express prior written consent of Licensor. Licensee shall make no alterations thereto or use any variation of the Licensed Marks without the express prior written consent of Licensor. Licensee shall provide

Licensor with samples of all signs, goods and promotional materials prepared by or for Licensee and intended to be used by it and bearing the Licensed Marks.

2.4     Licensee shall not: (a) grant a security interest in or to any of the Licensed Marks or this Agreement; (b) co-brand or otherwise combine the Licensed Marks with any other trademark or designation of origin, except as may be specifically approved in advance in writing by Licensor; or (c) sublicense the Licensed Marks for any purpose without the express written consent of Licensor.

2.5     Licensee agrees that its use, display and representation of the Licensed Marks shall always be accompanied by a "TM" superscript or a notice that the mark is registered in the United States Patent and Trademark Office by displaying letter "R" enclosed within a circle (i.e. ®) with the Licensed Marks, depending upon the registration status of the Licensed Marks, as may be advised by Licensor from time to time. Licensee shall assist Licensor in maintaining and/or registering the Licensed Marks, including by providing the required specimens of use and promptly executing all documents reasonably requested by Licensor, at Licensor's expense.

3.     Quality Control. All goods and services offered by Licensee under the Licensed Marks shall be provided in a manner that is consistent with the reputation and prestige of the Licensed Marks (the "Acceptable Quality Standards"), and shall be subject to the following:

3.1     Licensor has determined that the quality of the goods and services offered under the Licensed Marks as of the Effective Date meets the Acceptable Quality Standards.

3.2     In order to comply and to continue in compliance with the provisions of applicable trademark law including the United States Trademark Act of 1946 (U.S.C. §§1051 et seq.), with respect to control by Licensor of the nature and quality of the products sold by Licensee under the Licensed Marks, Licensee agrees that it shall use the Licensed Marks so as to establish and preserve the goodwill and good reputation associated with the Licensed Marks. Without limiting the generality of the foregoing, Licensee agrees to maintain the nature and quality of the products sold and the services provided at the Location, or at any other store owned or operated by Licensee under the Licensed Marks, in accordance with the Acceptable Quality Standards. Licensee agrees to offer only such products and services as are approved by Licensor. Licensee acknowledges and agrees that it shall strictly comply with any and all local, state and federal laws, regulations or rules in the operation of its business.

3.3     To assure continued compliance with the Acceptable Quality Standards, Licensee agrees to make available to Licensor or its designee, upon reasonable notice and with reasonable frequency, information and materials relating to the use of the Licensed Marks, including examples and specimens of use. Licensee shall provide to Licensor or its designee, upon request by Licensor from time to time, samples of any products sold by Licensor bearing the Licensed Marks and allow Licensor the right, upon reasonable notice to Licensee, to inspect the Location, or any other store owned or operated by Licensee under the Licensed Marks, from time to time to verify that Licensee is in compliance with its obligations under Section 3.2.

3.4     If Licensor determines in its sole discretion that any of Licensee's goods and services or Licensee's use of the Licensed Marks does not meet the Acceptable Quality Standards, Licensor may issue a written notice ("Notice") to Licensee. Upon receiving the Notice, Licensee shall, within a commercially reasonable time, but in any case no longer than 30 days, after receipt of the Notice, comply with such Acceptable Quality Standards to Licensor's satisfaction.

4.     Term. The term of this Agreement shall be effective as of the Effective Date and shall continue in perpetuity, unless terminated as provided in Section 6 of this Agreement ("Term"). Upon termination of this Agreement, howsoever occasioned, Licensee shall discontinue all use of the Licensed Marks within the time period(s) specified by Licensor in its reasonable discretion.

5.     Infringement. Licensee agrees to notify Licensor of any infringements of the Licensed Marks that come to Licensee's attention during the Term. Licensor shall have the exclusive right, exercised in its sole discretion, to pursue infringers of the Licensed Marks, and Licensee shall assist Licensor to the extent necessary to protect Licensor's rights in the Licensed Marks, at Licensor's expense.

6.     Termination.

6.1     For Breach.     In the event that Licensee shall default or breach the terms of this Agreement, Licensor shall have the right to terminate this Agreement upon written notice to Licensee; provided, however, that if such default or breach is capable of being cured, Licensee shall have the right to cure such default or breach within 30 days after the delivery of Licensor's termination notice and if such default or breach is cured, this Agreement shall remain in effect as if no termination notice had been given. By way of example only, any grant of a security interest or sublicense prohibited by Section 2.4, or any act that may tarnish or diminish the value of the Licensed Marks prohibited by Section 2.1, shall not be capable of being cured. Notwithstanding anything contained herein to the contrary, Licensor shall have the right to terminate this Agreement immediately (a) in the event Licensee breaches this Agreement on two occasions on the same grounds within a 12-month period after Licensor has provided written notice to Licensee of such breach on the first of such two occasions, (b) Licensee becomes insolvent or bankrupt, or bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings or other proceedings for relief under any bankruptcy law or laws for the relief of debtors are instituted against Licensee and are not dismissed within 30 days after such institution or a decree or order for the appointment of a trustee or receiver for Licensee for the major part of its properties is entered and the trustee or receiver appointed pursuant to such decree or order is not discharged within 30 days after such appointment, (c) Licensee shall institute bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings or other proceedings for relief under any bankruptcy law or laws for the relief of debtors or shall consent to the institution of such proceedings against it by others or to the entry of any decree or order adjudging Licensee bankrupt or insolvent or approve as filed any petition seeking reorganization under any bankruptcy or similar law or shall apply for or shall consent to the appointment of a receiver or trustee for any major part of its properties or Licensee shall make an assignment for the benefit of creditors, or (d) if Licensee shall abandon or discontinue use of the Licensed Marks.

6.2     Consent of the Parties. This Agreement may be terminated at any time by the mutual written consent of the Parties.

6.3     By Licensor.  Licensor may immediately terminate this Agreement in its sole discretion effective ninety (90) days after deposit of written notice to Licensee with a reputable overnight carrier.

6.4     Effect of Termination.  In the event of termination of this Agreement for any reason, then (a) the License shall immediately terminate, (b) Licensee shall thereupon cease to use and shall never again use the Licensed Marks; (c) Licensee shall deliver to Licensor all signs, goods and promotional materials bearing any of the Licensed Marks that are then in its possession, or shall certify that all such materials have been destroyed; and (d) Licensee shall refrain from using any name or mark that is confusingly similar or dilutive of any of the Licensed Marks.

7.     Further Assurances. The Parties agree to execute, acknowledge and/or deliver any and all additional documents, including additional copies and/or short form versions of this Agreement, reasonably necessary to evidence, record, and effectuate any and all of the rights granted under this Agreement and do all such things as may be necessary and proper to carry out and effectuate the intent and purpose of this Agreement.

8.     Representations and Warranties. Each Party represents and warrants to the other Party that (a) it has full right, power and authority to enter this Agreement and to perform its obligations set forth herein, and (b) this Agreement does not contravene any other Agreement to which it is a party.

9.     Indemnification. Licensee shall indemnify and hold Licensor harmless from and against any and all liability, damage, loss and/or expense, including, without limitation, settlement amounts and reasonable attorneys' fees, arising from any threatened claim, demand, action or proceeding arising from or relating to: (a) Licensee's use of the Licensed Marks; (b) Licensee's breach of its obligations, representations and/or warranties under this Agreement; (c) the marketing, promotion, and sale of the Goods and Services and the operation of the Location or any other store owned and/or operated by Licensee under the Licensed Marks; or (d) Licensee's acts and omissions under this Agreement.

10.    No Waiver. No waiver of any breach or series of breaches or defaults, and no failure, refusal or neglect to exercise any right hereunder or to insist upon strict compliance with or performance of a Party's obligations under this Agreement with respect to any subsequent breach thereof shall constitute a waiver of the other Party's right any time thereafter to require strict compliance with the provisions thereof.

11.    Severability. All provisions of this Agreement shall be severable. The invalidity of any provision shall not affect the validity of the remaining provisions. In the event of the invalidity of any provisions, this Agreement shall be interpreted and enforced as if such provisions were not contained herein.

12.    Assignment. This Agreement and all of Licensor's rights and obligations hereunder may be freely assigned by Licensor in connection with the sale, assignment or other

transfer of the Licensed Marks and the goodwill of the business associated therewith. This Agreement and all of Licensee's rights and obligations hereunder may be assigned by Licensee only with Licensor's prior written consent, to be provided in Licensor's sole discretion.

13. <u>Successors and Assigns</u>. This Agreement is binding on the Parties and their respective parents, affiliates, principals, officers, directors, members, their respective successors and permitted assigns.

14. <u>Independent Contractor</u>.

14.1 Licensee will perform under this Agreement solely as an independent contractor. Under no circumstances will any of Licensee's personnel be considered employees or agents of Licensor. This Agreement does not create an agency, partnership, or joint venture relationship between the Parties. In no way is either Party to be construed as the agent of the other Party in any respect or to have the right to obligate or bind the other Party in any manner whatsoever.

14.2 Licensee agrees to indemnify, defend and hold Licensor and its employees, agents, managers, officers and members harmless from and against any and all claims, demands, obligations, losses, liabilities, damages, interest, penalties, costs or expenses whatsoever of any kind or nature, including amounts paid in settlement and reasonable attorneys' fees incurred, including, but not limited to, any claims: (1) asserting any breach by Licensee of any representation, covenant, agreement or undertaking under this Agreement; (2) arising from any willful or negligent acts or omissions of Licensee or any worker employed by Licensee in connection with this Agreement; (3) based on any action taken by Licensee in conjunction with this Agreement which is illegal under any applicable local, state or federal laws; (4) any claims for wages or benefits pursuant to any federal, state or local law pertaining to the payment of employee wages or the provision of employee benefits; or (5) any claims that any of Licensee's employees are not authorized to work in the United States. The indemnification obligations of Licensee in this section shall apply regardless of whether Licensee, Licensor or both are named as defendants.

15. <u>Choice of Laws</u>. This Agreement shall be governed by and construed under and in accordance with the laws of the State of Illinois, without regard to its conflict of law provisions or the laws of any other country or jurisdiction. Any suit arising out of this Agreement shall be brought initially in the United States District Court for the Northern District of Illinois or in any Illinois state court having jurisdiction over the subject matter of the dispute or matter. Each Party hereto consents to the exercise of personal jurisdiction and proper venue by any such court with respect to any such proceeding.

16. <u>Survival</u>. The following provisions shall survive the termination of this Agreement according to their respective terms: Sections 2, 8-20.

17. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the Parties with respect to this subject matter. This Agreement may not be amended, modified or terminated, in whole or in part, except in a writing signed by the Parties hereto.

18. <u>Notices</u>. All notices and other communications required hereunder shall be in writing and deemed to have been given when: (a) personally delivered or sent via facsimile with a confirmation of transmission; (b) one business day after delivery to a nationally recognized overnight courier service delivery prepaid for next day delivery; or (c) three days after being mailed by certified mail, postage prepaid, addressed as follows:

    To Licensor:   ML Finance LLC

                          4192 IL Route 83, Suite C

                          Lincolnshire, Illinois 60047

                          Attn:   President

    To Licensee:   Bowery Kitchen Supplies, Inc.

                          88 10th Avenue

                          New York, New York 10011

                          Attn:  _____

19. <u>Execution in Counterparts; Signatures</u>. One or more counterparts of this Agreement may be executed and such counterparts shall constitute a duplicate original hereof. Signatures transmitted via facsimile or PDF shall be fully binding.

20. <u>Miscellaneous</u>. This Agreement is entered into without prejudice to any other agreements or covenants between the Parties.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the undersigned have executed this Trademark License Agreement effective as of the Effective Date.

| **LICENSOR** | **LICENSEE** |
|---|---|
| **ML Finance LLC** | **Bowery Kitchen Supplies, Inc.** |
| By: | By: |
| _____ | _____ |
| Printed Name: Marcus Lemonis | Printed Name: _____ |
| Title: Chairman and CEO | Title: _____ |

# SCHEDULE A

| MARK/DOMAIN | GOODS/SERVICES |
|---|---|
| BOWERY KITCHEN | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |
| BOWERY KITCHEN SUPPLY | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |
| BOWERY KITCHEN SUPPLIES | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |
| BOWERY KITCHEN SUPPLIES WHERE THE CHEFS SHOP & Design<br><br>BOWERY KITCHEN SUPPLIES Where the Chefs Shop | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |
| BOWERYKITCHEN & Design<br><br>BoweryKitchen | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |

| | |
|---|---|
| BOWERYKITCHENS & Design<br><br>[logo: chef hat with "bowerykitchens"] | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |
| BOWERY KITCHEN SUPPLIES INC. & Design<br><br>[logo: neon sign "BOWERY KITCHEN SUPPLIES INC."] | Restaurant and kitchen supplies; kitchenware; houseware; cooking utensils; and retail and online retail store services featuring the same; kitchen design services; stainless steel equipment design and fabrication services; restaurant and delicatessen services |
| BOWERY GRILLE | Restaurant and delicatessen services |
| BOWERY GRILLERS | Restaurant and delicatessen services |
| BOWERY EATS | Restaurant and delicatessen services |
| BOWERY EATS & Design<br><br>[logo: chef hat with "bowery EATS"] | Restaurant and delicatessen services |
| WWW.BOWERYKITCHENS.COM | |

25717765.1