**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOWARD NOURIELI, an individual, and : 
BOWERY KITCHEN SUPPLIES, INC., a New :
York Corporation, :
                :
                Plaintiffs :   Case No. 1:20-cv-08233-JPO
v. :
                :
MARCUS LEMONIS, an individual, MARCUS :
LEMONIS, LLC, a Delaware limited liability :
company, CWI, INC., a Kentucky corporation, :
MACHETE CORPORATION d/b/a MACHETE :
PRODUCTIONS, a California corporation, and :
DOES 1 through 10, inclusive, :
                :
                Defendants. :
                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS MARCUS LEMONIS AND MARCUS LEMONIS, LLC'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STATEMENT OF FACTS .......................................................................................1

III.  ARGUMENT .........................................................................................................4

    A.   Legal Standard for Federal Rule of Civil Procedure 12(b)(6) Motion to
        Dismiss ........................................................................................................4

    B.   All of Plaintiffs' claims fail due to improper group pleading ................................5

    C.   Plaintiffs' duplicative trademark and unfair competition claims (Counts 1-6)
        should be dismissed ......................................................................................7

        1.   Plaintiffs' direct trademark infringement and unfair competition
            claims (Counts 1-3) fail because they authorized the use of their
            mark ............................................................................................7

        2.   Plaintiffs' contribution claims (Counts 4, 5, and 6) fail because the
            ML Defendants did not induce, or otherwise know of, any
            infringement or unfair competition ........................................................11

    D.   Plaintiffs fail to state plausible tort claims .........................................................12

        1.   The economic loss doctrine and the prohibition on disguising
            contract claims as tort claims bar Plaintiffs' tort claims..........................12

        2.   Plaintiffs' overlapping fraud claims (Counts 8, 9, 10, 11, 12) are
            duplicative and lack the requisite particularity, due to group pleading
            and the nebulous alter ego allegations....................................................14

        3.   Plaintiffs' claim for deceptive practices in violation of GBL 349
            (Count 7) fails because trademark infringement or unfair competition
            and private grievances do not give rise to such a claim ..........................16

        4.   Plaintiffs' tortious interference claim (Count 13) fails............................17

        5.   Plaintiffs' unjust enrichment (Count 14) claim is barred .........................18

    E.   Plaintiffs' civil RICO claim (Count 15) should be dismissed because
        Plaintiffs have not pled and cannot plead the elements of that claim, let
        alone with the requisite particularity.................................................................19

    F.   Plaintiffs' claim for declaratory judgment fails because they have failed to
        plead an actual justiciable controversy to be resolved by the Court....................24

G.      Leave to amend should be denied..........................................................24

IV.     CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*@Wireless Enters. v. AI Consulting, LLC*,
2006 WL 3370696 (W.D.N.Y. Oct. 30, 2006) ....................................................................6

*1-800 Contacts Inc. v. WhenU.com, Inc.*,
414 F.3d 400 (2d Cir. 2005) ...............................................................................................8

*ACLU v. NSA*,
925 F.3d 576 (2d Cir. 2019) ...............................................................................................1

*Affiliated Hospital Prods., Inc. v. Merdel Game Mfg. Co.*,
513 F.2d 1183 (2d Cir. 1975)..............................................................................................8

*Am. Bldg. Maint. Co. v. ACME Prop. Servs.*,
515 F. Supp. 2d 298 (N.D.N.Y. 2007) ..............................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................5, 6, 9

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ............................................................................................5

*Billy v. Consolidated Machine Tool Corp.*,
51 N.Y.2d 152 (1980)..........................................................................................................5

*Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank, N.A.*,
165 A.D.3d 526 (1st Dep't 2018).......................................................................................13

*Blackrock Core Bond Portfolio v. U.S. Bank N.A.*,
165 F. Supp. 3d 80 (S.D.N.Y. 2016)..................................................................................12

*BNP Paribas Mortg. v. Bank of Am., N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013)...........................................................................12, 13

*Camp Summit of Summitville, Inc. v. Visinski*,
2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007) ...................................................................17

*Cerasani v. Sony Corp.*,
991 F. Supp. 343 (S.D.N.Y. 1998).......................................................................................1

*Combier-Kapel v. Biegelson*,
242 F. App'x 714 (2d Cir. 2007) .........................................................................................1

*Condos Bros. Constr. Corp. v. Main St Am. Assur. Co.*,
  280 F. Supp. 3d 349 (E.D.N.Y. 2017) .................................................................. 19, 21, 22

*Cruz v. Fxdirectdealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ................................................................................ 19, 20, 21

*Cullen v. Margiotta*,
  811 F.2d 698 (2d Cir. 1987) ........................................................................................20

*D'Andrea v. Ralfa-Demetrious*,
  3 F. Supp. 2d 239 (E.D.N.Y. 1996).............................................................................17

*DePinto v. Ashley Scott, Inc.*,
  222 A.D.2d 288 (1st Dep't 1995).................................................................................16

*DiTolla v. Doral Dental IPA of N.Y., LLC*,
  100 A.D.3d 586 (2d Dep't 2012) .................................................................................15

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  228 F.R.D. 508 (S.D.N.Y. 2005) ...................................................................................6

*Egerique v. Chowaiki*,
  2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020) ................................................. 19, 21, 22, 23

*Evercrete Corp. v. H-Cap Ltd.*,
  429 F. Supp. 2d 612 (S.D.N.Y. 2006) .........................................................................23

*Ferrarini v. Irgit*,
  2020 WL 122987 (S.D.N.Y. Jan. 9, 2020) ..................................................................17

*First Keystone Consultants, Inc. v. DDR Constr. Servs.*,
  74 A.D.3d 1135 (2d Dep't 2010) .................................................................................15

*Friedlander v. Rhoades*,
  962 F. Supp. 428 (S.D.N.Y. 1997)...............................................................................20

*Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*,
  2019 WL 274967 (S.D.N.Y. Jan. 7, 2019) ..................................................................23

*Garcia v. Chrysler Grp. LLC*,
  127 F. Supp. 3d 212 (S.D.N.Y. 2015) ................................................................... 14, 15

*Gartner v. Snyder*,
  607 F.2d 582 (2d Cir. 1979) ..........................................................................................5

*Gomez-Jimenez v New York Law School*,
  103 A.D.3d 13 (1st Dep't 2012) ..................................................................................16

*Hartree Partners, LP v. Camin Cargo Control, Inc.*,
2016 WL 1572001 (N.Y. Sup. Ct. Apr. 18, 2016)............................................................13

*Helios Int'l S.A.R.L. v. Catnamessa USA, Inc.*,
23 F. Supp. 3d 173 (S.D.N.Y. 2014)...................................................................................23

*Hill v. Berkman*,
635 F. Supp. 1228 (E.D.N.Y. 1986).....................................................................................24

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
679 F. Supp. 2d 395 (S.D.N.Y. 2009)...................................................................................8

*Int'l Council of Shopping Ctrs., Inc. v. Global Infotech LLC*,
2019 WL 2004096 (S.D.N.Y. May 7, 2019) .......................................................................18

*Kelly-Brown v. Winfrey*,
717 F.3d 295 (2d Cir. 2013) ..............................................................................................12

*Koenig v. Boulders Brands, Inc.*,
995 F. Supp. 2d 274 (S.D.N.Y. 2014) ................................................................................18

*Loeb v. Architecture Work, P.C.*,
154 A.D.3d 616 (1st Dep't 2017).......................................................................................16

*Lucente v. IBM*,
310 F.3d 243 (2d Cir. 2002) ..............................................................................................24

*Manchanda v. Google*,
2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016).....................................................................18

*Nadel v. Play-by-Play Toys & Novelties, Inc.*,
208 F.3d 368 (2d Cir. 2000) ..............................................................................................17

*Nesbeth v. New York City Mgmt., LLC*,
2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ...........................................................................5

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
94 F.3d 747 (2d Cir. 1996) ................................................................................................24

*Oswego v. Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995)...........................................................................................................16

*Park v. Citizen's Bank, N.A.*,
2019 WL 5569680 (S.D.N.Y. Oct. 29, 2019)......................................................................24

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013) ................................................................................................4

*Petedge, Inc. v. Garg*,
    234 F. Supp. 3d 477 (S.D.N.Y. 2017) ................................................................. 14

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp, Inc.*,
    2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) ........................................................ 20

*Plount v. Am. Home Assurance Co.*,
    668 F. Supp. 204 (S.D.N.Y. 1987) ....................................................................... 19

*Port Chester Electrical Constr. Corp. v. Atlas*,
    40 N.Y.2d 652 (1976) .............................................................................................. 5

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
    68 F.3d 1478 (2d Cir. 1995) ................................................................................. 15

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ..................................................................................... 5

*Singer v. Xipto Inc.*,
    852 F.2d 416 (S.D.N.Y. 2012) ............................................................................... 9

*Solid 21, Inc. v. Richemont North Am., Inc.*,
    2020 WL 3050970 (S.D.N.Y. June 8, 2020) ........................................................ 16

*Vacold LLC v. Cerami*,
    545 F.3d 114 (2d Cir. 2008) ................................................................................... 9

*VR Optics, LLC v. Peloton Interactive, Inc.*,
    2020 WL 1644204 (S.D.N.Y. Apr. 2, 2020) ........................................................ 14

*Winston v. Medifare-Enntm't Corp.*,
    777 F.2d 78 (2d Cir. 1985) ..................................................................................... 9

**Statutes**

15 U.S.C. § 1114 ............................................................................................................. 8

15 U.S.C. § 1125 ............................................................................................................. 8

18 U.S.C. § 1962 ........................................................................................................... 19

18 U.S.C. § 2320 .................................................................................................... 22, 23

New York General Business Law § 349 ................................................................... 3, 16

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................... 5, 6

Fed. R. Civ. P. 9 .......................................................................................... 14, 16, 19

Fed. R. Civ. P. 12 ......................................................................................... 1, 4, 7, 24

Defendants Marcus Lemonis ("Lemonis") and Marcus Lemonis, LLC (collectively, the "ML Defendants") respectfully submit this memorandum of law in support of their motion for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Amended Complaint (Dkt. No. 21) (the "Complaint") of Plaintiffs Howard Nourieli ("Nourieli") and Bowery Kitchen Supplies, Inc. ("Bowery Kitchen") (collectively, "Plaintiffs").

## I.    PRELIMINARY STATEMENT

This lawsuit arises from Plaintiffs' appearance on the television series "The Profit," which is hosted by Lemonis.  Nearly four years after appearing on the show, Plaintiffs closed their New York City retail store.  Despite this gap between Plaintiffs' appearance on the show and Plaintiffs' closing of their business, and despite benefiting from "The Profit" and Lemonis' renovations to Plaintiffs' store, Plaintiffs now blame the ML Defendants for their inability to keep the store open. Plaintiffs' attempt to shift their failures is baseless, and their Complaint should be dismissed.

## II.    STATEMENT OF FACTS

Plaintiff Nourieli, an often-absent business owner, ran Bowery Kitchen along with his partner, non-party Robyn Coval ("Coval")—a business that, as Nourieli told millions of television viewers on "The Profit" was a "struggling business."[1]  Nourieli admitted on "The Profit" that his business had lost $121,000 during the prior year and that the business owed nearly $130,000 in debts that were past due, although Plaintiffs apparently now claim that these statements were false.

---

[1] *Available at* https://www.youtube.com/watch?v=az7eBITcdnc.  On a motion to dismiss, the Court can consider statements made by Plaintiffs during the October 18, 2016 episode of "The Profit," as that episode of "The Profit" is integral to their Complaint and Plaintiffs themselves quote extensively from dialogue in the episode (Compl. ¶¶ 6, 68, 72, 76); the Court can similarly consider other public statements by Plaintiffs that are part of the public record. *See, e.g., ACLU v. NSA*, 925 F.3d 576, 599 n.126 (2d Cir. 2019); *Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3 (S.D.N.Y. 1998).

The ML Defendants are prepared to provide the Court and counsel for the other parties with a video file of Plaintiffs' "The Profit" episode if the Court so requests.

Compl. ¶ 66.[2]  Plaintiffs welcomed Lemonis' investment into their "struggling" business.

Lemonis originally agreed to invest $350,000 into Plaintiffs' business in exchange for a 33.3% ownership share in Bowery Kitchen.  Compl. ¶¶ 68, 71.  Lemonis invested ***more than*** $350,000, however, by spending at least $400,000 on renovations and inventory upgrades in Bowery Kitchen's store in the Chelsea Market in Manhattan, as recounted on "The Profit."  *See also* Compl. ¶¶ 80-86.  Lemonis also spearheaded a liquidation sale of unsold, aging inventory in Plaintiffs' store, which, as shown on "The Profit," yielded $385,000 that Coval and Bowery Kitchen's general manager, Lori, felt compelled to hide from Nourieli in order to keep him from misusing the funds.  *See also* Compl. ¶ 74.

As shown on "The Profit," Coval and Plaintiffs' employees loved Lemonis' renovations: Coval said "I love it" when she saw the revamped store, and general manager Lori said "it's definitely really nice."  When he finally showed up to the store after an unexplained absence, Nourieli appeared to approve of the renovations as well.  In fact, Nourieli was so pleased that he took to Twitter to promote the brand-new store and Plaintiffs' appearance on "The Profit." "BOWERY KITCHEN GRAND REOPENING," Plaintiffs declared on August 24, 2016 in all caps, "EVERYTHING CLEAN AND SHINY."[3]  Two days later, Nourieli wrote "Grand Re-opening TODAY To Be Seen on 'The Profit' CNBC.'"[4]  Nourieli posted multiple tweets promoting the episode of "The Profit."[5]  Nourieli continued to use his and Bowery Kitchen's appearance on "The Profit," without authorization, to promote Plaintiffs' business into the next

---

[2] A copy of the Complaint is annexed as **Exhibit A** to the Declaration of Owen R. Wolfe (the "Wolfe Decl."), filed herewith.
[3] https://twitter.com/bowerykitchen/status/768566662354219009.
[4] https://twitter.com/bowerykitchen/status/769258071671570432.
[5] https://twitter.com/bowerykitchen/status/788481538195349504;
https://twitter.com/TheProfitCNBC/status/788579194934480896;
https://twitter.com/bowerykitchen/status/788936145207980032.

year, tweeting in June 2017, among other things, that Nourieli was "[a]ttending the premiere of 'THE PROFIT' new season with Marcus Lemonis."[6]  Plaintiffs' last alleged contact with any representative of the ML Defendants was in August 2017.  Compl. ¶ 115.

Nearly four years after filming their episode of "The Profit," and nearly three years after Plaintiffs' last alleged contact with the ML Defendants, in March 2020, Plaintiffs closed their store in Chelsea Market.  Compl. ¶ 118.  Although Plaintiffs now blame Lemonis (*id.*), in a public statement at the time of the closure, Plaintiffs explained that "[t]he retail landscape has change[d] so dramatically in the past few years, we just cannot move forward as a traditional 'brick and mortar' in NYC."[7]

Nourieli was unable to accept his business failures.  On October 2, 2020, Nourieli and Bowery Kitchen filed this lawsuit.  On November 2, 2020, Plaintiffs filed their Amended Complaint.  The Complaint names as defendants Lemonis; Marcus Lemonis, LLC; Machete Corporation ("Machete"), a company that serves as a developer and producer for "The Profit"; and CWI, Inc. ("CWI"), a publicly-traded company for which Lemonis serves as CEO.  Compl. ¶¶ 16-19.  The Complaint asserts, in scattershot fashion over the course of 80 pages and 304 paragraphs, 16 causes of action: (1) three causes of action for direct trademark infringement and unfair competition under the Lanham Act and state law against the ML Defendants and CWI; (2) three causes of action for contributory trademark infringement and unfair competition against the ML Defendants; (3) one cause of action for deceptive business practices under Section 349 of the New York General Business Law ("GBL 349") against the ML Defendants and CWI; (4) four causes of action for fraud, fraudulent inducement, fraudulent misrepresentation, and promissory fraud

---

[6] https://twitter.com/bowerykitchen/status/872252981168812033;
https://twitter.com/bowerykitchen/status/873216971827023872.
[7] Wolfe Decl. Ex. B.

against the ML Defendants and Machete; (5) one cause of action for fraudulent concealment against Lemonis only; (6) one cause of action for tortious interference with business relations against the ML Defendants and CWI; (7) one cause of action for unjust enrichment against the ML Defendants and CWI; (8) one cause of action for civil RICO against the ML Defendants, Machete, and CWI; and (9) one cause of action for declaratory judgment against the ML Defendants. Compl. ¶¶ 120-304.[8]

The bloated nature of the Complaint appears aimed at obscuring a fundamental fact: Plaintiffs' business failed many years after Plaintiffs appeared on "The Profit," not because of any Defendants' conduct, but because Nourieli was an absentee business owner running a failing retail store, whose own partner and employees had to hide money from him to protect the business. Lemonis' extensive investment through renovations and upgraded inventory staved off the business' demise for several years, but ultimately even Nourieli admitted he was unable to overcome his own shortcomings in order to run a successful "brick and mortar" retail store in the challenging retail environment present in New York City. Nourieli has turned his bitterness into attacks on Lemonis and the other defendants. Plaintiffs' causes of action should be dismissed.

## III.  ARGUMENT

### A.  Legal Standard for Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (internal quotation marks omitted)

---

[8] Plaintiffs attached the following exhibits to the Complaint: <u>Exhibit A</u>: printout from the United States Patent & Trademark Office regarding the "Bowery Kitchen Supplies Where the Chefs Shop" trademark; <u>Exhibit B</u>: term sheet between Plaintiffs, Coval, and Marcus Lemonis, LLC, signed by both Nourieli and Coval; <u>Exhibit C</u>: Purchase Agreement, dated December 20, 2016; <u>Exhibit D</u>: Trademark License Agreement, dated December 20, 2016.

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering a motion to dismiss for failure to state a claim, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

**B.      All of Plaintiffs' claims fail due to improper group pleading.**

Plaintiffs' Complaint fails because nearly all of their causes of action are premised upon the notion that all alleged acts of Lemonis can be attributed to Marcus Lemonis, LLC, and thus Plaintiffs generally assert that the "Lemonis Defendants" engaged in purported misconduct, or that the "Lemonis Defendants and Camping World," "Lemonis Defendants and DOES 1 through 10," or "Defendants" did so, without explaining who allegedly did what. *See* Compl. ¶¶ 122-31, 135-140, 143-51, 156-65, 167-8, 170-7, 182-91, 193-4, 199-203, 206, 236, 246, 256-9, 265-6, 281, 283, 284, 294.

This "group pleading" is improper. *See, e.g., Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("Fed. R. Civ. P. 8 . . . requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'  By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard" (internal citations omitted)); *Nesbeth v. New York City Mgmt., LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019).

Plaintiffs attempt to remedy this flaw by relying upon allegations that the ML Defendants are alter egos of one another and thus responsible for each other's acts.  But courts in New York only disregard the separateness of entities "reluctantly," and then only in cases where an entity or individual exercises such domination and control over the alleged alter ego that the second entity is rendered a mere "dummy" or "shell" entity. *See Gartner v. Snyder*, 607 F.2d 582, 586-88 (2d Cir. 1979); *Billy v. Consolidated Machine Tool Corp.*, 51 N.Y.2d 152, 163 (1980); *Port Chester Electrical Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656 (1976).  Even where an entity is owned by

one individual, conclusory allegations of domination and control, without supporting facts, are insufficient to meet the pleading standard set forth in Rule 8. *See, e.g., @Wireless Enters. v. AI Consulting, LLC*, 2006 WL 3370696, at *6 (W.D.N.Y. Oct. 30, 2006). Moreover, merely pleading that an entity or individual exercised such extensive domination and control over the alleged alter egos that they were rendered "dummy" or "shell" entities is not enough. Plaintiffs must also plead facts sufficient to demonstrate that the alleged domination and control giving rise to the alter ego status was what caused the plaintiffs' injuries, *i.e.*, that the alleged alter ego was created to perpetrate a fraud against plaintiffs. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 513 (S.D.N.Y. 2005).

Here, Plaintiffs' bare-bones allegations regarding commingling of funds, disregard of the corporate form, and so forth are insufficient to meet the high burden of pleading alter ego status. *See* Compl. ¶¶ 22-25. Plaintiffs offer nothing more than conclusory statements that the Court should ignore under the standard articulated in *Iqbal* and similar cases. Plaintiffs do not allege any actual facts, for example, regarding how the ML Defendants disregarded corporate formalities, what funds or assets were allegedly commingled, or anything else that would allow the Court to draw any such inferences as a result of Plaintiffs' conclusory statements. Compl. ¶¶ 22-25. On the contrary, the Complaint concedes that, far from being a "dummy" or "shell" entity, Marcus Lemonis, LLC is an actual, operating corporation with employees other than Lemonis and a real business. *See, e.g.*, Compl. ¶¶ 88 (Marcus Lemonis, LLC sent contract to Plaintiffs), 93 (Jeffrey Dombroski is the "VP and CFO" of Marcus Lemonis, LLC). The Complaint does not contain any non-conclusory allegations from which the Court could reasonably infer that Marcus Lemonis, LLC is a mere "dummy" or "shell" entity.

Even if Plaintiffs had adequately pled such extensive domination and control by Lemonis

to render Marcus Lemonis, LLC a mere "dummy" or "shell" entity (they have not), Plaintiffs' pleading still fails because they have not alleged that such domination or control caused their injuries. The Complaint primarily relies upon allegations that Lemonis individually misled Plaintiffs and then used their business and their trademarks to enrich himself and other entities. In other words, Plaintiffs allege that their injuries were caused by alleged misrepresentations, trademark infringement, unfair competition, and other misconduct—not by ignoring corporate formalities, commingling entity funds and assets, and the like. *See, e.g.,* Compl. ¶¶ 122-132, 199, 206, 219, 227, 236, 246, 257, 265, 294.

In short, Plaintiffs did not allege, and cannot allege in accordance with Rule 11, that Marcus Lemonis, LLC, was formed as a "sham" entity to defraud Plaintiffs. Plaintiffs' failure to plead causation dooms their alter ego allegations, and all of the causes of action that rely upon those allegations. And even if, despite all of the foregoing, Plaintiffs had adequately alleged that Lemonis and Marcus Lemonis, LLC are alter egos (they did not), that does not fix Plaintiffs' improper lumping of the ML Defendants together with CWI, Machete, or "John Does 1 through 10" in various causes of action. Accordingly, those claims fail in any event.

### C. Plaintiffs' duplicative trademark and unfair competition claims (Counts 1-6) should be dismissed.

#### 1. Plaintiffs' direct trademark infringement and unfair competition claims (Counts 1-3) fail because they authorized the use of their mark.

Plaintiffs' trademark infringement claims fail because the allegations of the Amended Complaint, and its attached Exhibit B, establish that the Plaintiffs entered into a binding contract with Lemonis, the CEO of CWI, expressly consenting to the use of the Bowery Kitchen logo.[9]

---

[9] The Lemonis Defendants dispute facts alleged in the Amended Complaint. However, taken as true as required in the context of a Rule 12(b)(6) motion, Plaintiffs' allegations establish that the agreements reached by the parties during the filming of "The Profit" constitute at least a binding preliminary agreement.

Exhibit B to the Amended Complaint, which Plaintiffs admit to signing in August of 2016, gives Lemonis the right to sell "bowery branded products" outside the Bowery Kitchen marketplace in exchange for Lemonis' payment of more than $400,000 and a 5% royalty on any such sales. Compl. ¶ 90 & Ex. B at 5 ("Robin and Howard are entitled to receive 5% of any bowery branded products sold in the marketplace outside of the stores, ie qvc, bed bath and beyond."). If Plaintiffs believe that Lemonis has not complied with the terms of the parties' agreement, their claim is for breach of contract and not for trademark infringement.

To state a claim for infringement of a registered mark under 15 U.S.C. § 1114 or an unregistered mark under 15 U.S.C. § 1125, a plaintiff must allege that "(it has a valid mark that is entitled to protection under the Lanham Act, and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' (5) **without the plaintiff's consent**." *1-800 Contacts Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406 (2d Cir. 2005) (emphasis added) (citations omitted). Where a trademark owner has entered into an agreement consenting to the use of its trademark, the consent element is negated and plaintiff may only assert a claim for infringement if it can establish facts sufficient to warrant recission of that agreement. *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009) ("where license agreement existed the 'agreement controls the rights of the respective parties in the use of the [trademark] and in order to bring a claim for trademark infringement, the licensor must show conduct by the licensee 'sufficiently grave to warrant recission of that agreement' – absent such showing, licensor is only entitled to a claim for breach of contract.") (quoting *Affiliated Hospital Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1186 (2d Cir. 1975)). Plaintiffs concede this when they allege in their First and Third Causes of Action: "In the alternative, if the Alternate Term Sheet is deemed to be valid, Plaintiff Bowery

Kitchen is owed a percentage of all sales of Bowery Kitchen branded products as stated in the Alternate Term Sheet." Compl. ¶¶ 132; 152.

The Amended Complaint is replete with allegations that show that, in August of 2016, the parties entered into a binding agreement whereby the Plaintiffs consented to the use of their claimed trademark. Plaintiffs assert that both the on air agreement reached by the parties and the "Alternative Term Sheet" (Exhibit B) did not create binding obligations. Compl. ¶ 90. Of course, *Iqbal* requires that a conclusory allegation such as this be supported by facts sufficient to render them plausible, and Plaintiffs allege no such facts. *Iqbal*, 556 U.S. at 678. These conclusory allegations should be disregarded, and the Court should examine the facts alleged by the Plaintiffs to determine whether Plaintiffs have adequately stated a claim.

Under New York law, preliminary agreements such as the parties' on-air agreement described in Paragraph 68 and memorialized in Exhibit B are binding and enforceable when it is clear from the circumstances that the parties have agreed on all terms, intend to be bound, and simply plan to later memorialize the terms in a more formal agreement. *Vacold LLC v. Cerami*, 545 F.3d 114, 123-24 (2d Cir. 2008); *see also Singer v. Xipto Inc.*, 852 F.2d 416, 422-425 (S.D.N.Y. 2012). Courts apply a four factor test to determine whether such agreements are binding:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Singer*, 852 F. Supp. 2d at 423 (*quoting Winston v. Medifare-Enntm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). "Evaluating these factors, however, is not a 'talismanic scorecard . . . [t]he ultimate issue, as always, is the intent of the parties to be bound, and if so, to what extent." *Id.* (*quoting Vacold*, 545 F.3d at 125. Applying these factors to the facts alleged in the Amended Complaint leave no doubt that Plaintiffs consent to the use of the alleged mark in Exhibit B is a binding and

enforceable agreement by which they have consented to use of the mark.

Regarding the first factor, Exhibit B includes no express reservations of a right not to be bound in the absence of a further writing. Indeed, the allegations of the Amended Complaint establish that the Plaintiffs understood that any deal reached on the show would be binding. In Paragraph 61, Plaintiffs allege that, on May 5, 2016, one of the producers of *The Profit* e-mailed them and explained: "The offer process is a true negotiation. What you see on tv is the actual offer and counter . . . The deal is made there and then like in business, there is no going back once you reach an agreement. There is no sleeping on it." In Paragraph 68, the Plaintiffs allege that during the show the parties reached an oral agreement that Lemonis would become an owner of 33% of the Plaintiffs' business in exchange for $350,000. Then, in Paragraphs 88 and 89, the Plaintiffs allege that in early August of 2016, while the show was still filming, they signed an "Alternate Term Sheet" by which they consented to Lemonis' use of the alleged mark in exchange for certain payments. Compl. ¶¶ 88-89, Ex. B. Regarding the second factor, whether there has been partial performance, the Amended Complaint alleges that, consistent with the on-air agreement, Lemonis put significant resources into the business and Plaintiffs allowed him to make decisions for the business consistent with the parties' new partnership. In Paragraph 73, Plaintiffs allege: "While Plaintiffs' episode was being filmed, Lemonis immediately started making changes to the store that both Howard and Robyn were not comfortable doing nor had any control over." The Plaintiffs' further allege that Lemonis "forced Bowery Kitchen to liquidate the store's entire inventory . . .[,]" that he "forced Plaintiff Howard and Robyn to host an 'Everything Must Go!' sale [], and that after the liquidation sale "Bowery Kitchen remained empty for approximately another month until Lemonis brought in companies to renovate." Compl. ¶¶ 74-75. Plaintiffs then allege that Lemonis brought in his own contractors, implicitly at his own expense, to renovate Bowery Kitchen. Compl.

¶¶ 80-82. Finally, the Amended Complaint alleges that Lemonis paid Plaintiffs $290,000 after execution of the "Alternate Term Sheet" in early August, 2016. The Amended Complaint contains no explanation as to why Plaintiffs would allow Lemonis to make these business decisions, or why Lemonis would bring in contractors and make a nearly $300,000 payment to Plaintiffs, if the parties did not intend to be bound by their agreements.

Regarding the third and fourth factors, whether all of the contract terms had been agreed upon and whether the agreement is the type that is usually committed to writing, the terms discussed on the show establish (1) the amount Lemonis was to invest; (2) the ownership percentage Lemonis received for his investment; and (3) how the revenue from future sales of products was to be shared among the parties. Compl. ¶¶ 68, 88-89, Ex. B. The parties did, in fact, commit at least part of the deal to writing in Exhibit B. And the Plaintiffs allege that they understood the deals made on-air to be binding: "The deal is made there and then like in business, there is no going back once you reach agreement." Compl. ¶61.

In short, the Plaintiffs have included sufficient detail in the Amended Complaint to plead themselves out of Court. The Amended Complaint establishes that the Plaintiffs agreed to allow the use of their mark in a binding preliminary agreement. As such, if Plaintiffs believe that Lemonis has not performed his end of the bargain, their remedy lies in a state law breach of contract claim and not in trademark infringement. The Plaintiffs' trademark claims (Causes of Action One through Three) should be dismissed.

> ## 2. Plaintiffs' contribution claims (Counts 4, 5, and 6) fail because the ML Defendants did not induce, or otherwise know of, any infringement or unfair competition.

Plaintiffs also assert that the ML Defendants (along with "John Does 1 through 10") contributed to CWI's alleged infringement and unfair competition. To adequately plead a claim for contributory infringement or unfair competition, Plaintiffs must allege that the defendant

(1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013).

Here, Plaintiffs have not adequately alleged these elements for the same reasons set forth above in connection with the direct infringement and unfair competition claims: the ML Defendants believed, and had every reason to believe, that they had authorization to utilize Plaintiffs' trademark. Compl. ¶¶ 89, 102, 283 and Ex. B thereto. Accordingly, Plaintiffs' allegations confirm that the ML Defendants did not intentionally induce anyone to infringe or supply products with knowledge of infringement, since they had no reason to believe that CWI's conduct constituted infringement.

### D. Plaintiffs fail to state plausible tort claims.

#### 1. The economic loss doctrine and the prohibition on disguising contract claims as tort claims bar Plaintiffs' tort claims.

Plaintiffs' tort causes of action are barred by the economic loss doctrine. Under New York law, "the economic loss doctrine" provides "that a contracting party seeking only a benefit of the bargain recovery may not sue in tort notwithstanding the use of familiar tort language in its pleadings." *Blackrock Core Bond Portfolio v. U.S. Bank N.A.*, 165 F. Supp. 3d 80, 106 (S.D.N.Y. 2016) (breach of fiduciary duty claims barred by economic loss doctrine). "The economic loss doctrine protects parties' abilities to allocate risk by mutual agreement and thereby form reliable expectations about their potential financial exposure with respect to the duties and liabilities that they have contractually assumed." *BNP Paribas Mortg. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013).

Although some New York courts have suggested that the economic loss doctrine only applies in the context of products liability cases, New York courts have nonetheless recognized

and applied the same, "broader principle . . . that where a plaintiff is pursuing a claim based upon a contract, 'tort claims . . . fail [where, as in this case,] a plaintiff merely alleges economic loss.'" *Hartree Partners, LP v. Camin Cargo Control, Inc.*, 2016 WL 1572001, at *2 (N.Y. Sup. Ct. Apr. 18, 2016) (brackets in original); *see also Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank, N.A.*, 165 A.D.3d 526, 528 (1st Dep't 2018) (affirming trial court's application of economic loss doctrine to breach of fiduciary duty claim). More broadly, "to plead a tort claim, a plaintiff must allege an independent duty that spring[s] from circumstances extraneous to, and not constituting elements of, the contract" because tort claims "cannot be predicated on a mere breach of contract, but may only succeed if the plaintiff alleges the violation of an independent duty." *BNP Paribas*, 949 F. Supp. 2d at 505 (internal quotation marks omitted). At bottom, a plaintiff "may not transmogrify the contract [claim] into one for tort." *Id.* (internal quotation marks omitted).

Here, Plaintiffs' claims are barred, whether by the economic loss doctrine or the fact that the claims are not independent of a contract claim. Plaintiffs' various duplicative fraud claims rely upon alleged misrepresentations that, *inter alia*, Plaintiffs would be equal partners with Lemonis as part of their agreement, that Lemonis would invest to help Plaintiffs' business, that Lemonis would direct and manage Bowery Kitchen, that the liquidations and renovations of Plaintiffs' store were to benefit the business, that Plaintiffs would receive royalties, that Plaintiffs would not need to pay back Lemonis' investment pursuant to the parties' agreement, and that CWI would stop its alleged sale of Bowery Kitchen-branded products. Compl. ¶ 206, 219, 227, 236, 246 . Similarly, Plaintiffs' other tort claims are based upon the supposed misuse of Plaintiffs' alleged trademarks under the agreement, Lemonis' representations that he would help Plaintiffs' business get to "the next level" as a result of their agreement, and the ML Defendants' supposed mismanagement of the business after the agreement was reached. Compl. ¶¶ 199, 257, 265, 283, 284.

All of these allegations arise out of the agreement the parties reached on "The Profit." They are, at bottom, claims that Lemonis did not act in accordance with the parties' bargain, and that Plaintiffs did not get the benefit they bargained for. This rehashing of what should be contract claims is precisely what the economic loss doctrine and the bar against "transmogrifying" contract claims into tort claims prohibit. Accordingly, Plaintiffs' tort claims should be dismissed.

2.    **Plaintiffs' overlapping fraud claims (Counts 8, 9, 10, 11, 12) are duplicative and lack the requisite particularity, due to group pleading and the nebulous alter ego allegations.**

Plaintiffs' overlapping claims for fraud, fraudulent inducement, fraudulent concealment, fraudulent misrepresentation, and promissory fraud are subject to the heightened pleading requirement set forth in Federal Rule of Civil Procedure 9(b). Accordingly, Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Put another way, Plaintiffs must plead "the who, what, when, where and how: the first paragraph of any newspaper story." *Petedge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (internal quotation marks omitted). Here, Plaintiffs' ambiguous alter ego pleading that lumps defendants together, as set forth above, leaves unanswered at least the "who" in Plaintiffs' various fraud claims. The lack of this basic information makes it impossible to associate Plaintiffs' allegations with specific entities in order to determine whether a claim exists and its potential defenses. As such, Plaintiffs' fraud claims fail and must be dismissed.

Plaintiffs' claim for fraudulent concealment against Lemonis only also fails for additional reasons. Plaintiff must allege "(1) a duty to disclose on the part of defendant; (2) concealment or failure to disclose by defendant; (3) reliance by the plaintiff (or inducement of plaintiff to act); (4) damages; and (5) proximate causation." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 234 (S.D.N.Y. 2015); *see also VR Optics, LLC v. Peloton Interactive, Inc.*, 2020 WL 1644204, at *5 (S.D.N.Y. Apr. 2, 2020). A duty to disclose arises where there is a "fiduciary relationship"

between parties; one party "makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party"; or where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995); *see also Garcia*, 127 F. Supp. 3d at 235-36.

Here, Plaintiffs argue their fraudulent concealment claims arise from an alleged fiduciary duty Lemonis purportedly owed to them, and from allegedly ambiguous statements Lemonis made to the effect of "trust the process." Compl. ¶¶ 226-27. The first argument is a legally incorrect conclusion, and the second (even if true) does not give rise to fraudulent concealment or any other cause of action.

With respect to a fiduciary duty, under New York law, such a relationship is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *First Keystone Consultants, Inc. v. DDR Constr. Servs.*, 74 A.D.3d 1135, 1136 (2d Dep't 2010). Accordingly, "[a] conventional business relationship, without more, is insufficient to create a fiduciary relationship." *DiTolla v. Doral Dental IPA of N.Y., LLC*, 100 A.D.3d 586, 587 (2d Dep't 2012). "If the parties" to a transaction "do not create their own relationship of higher trust" by contract, "courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." *First Keystone*, 74 A.D.3d at 1136.

Here, Lemonis' alleged agreement with Plaintiffs said nothing about fiduciary duties, and was instead an arm's-length transaction. Compl. ¶¶ 68, 71. Moreover, the allegations in the Complaint make clear that, from the outset of their relationship, Plaintiffs did not repose trust and confidence in Lemonis: Plaintiffs were allegedly hesitant to appear on "The Profit;" they were advised that their negotiations with Lemonis would be "a true negotiation" with an "actual offer

15

and counter;" and they admit that Nourieli had a "tense conversation" with Lemonis during "the filming of the show;" which included Nourlieli allegedly calling Lemonis' conduct "a bunch of bullsh*t." Compl. ¶¶ 56-61, 76. Stating that someone is engaging in "a bunch of bullsh*t" is not the hallmark of a fiduciary relationship in New York or anywhere else.

With respect to Lemonis' alleged statement to "trust the process," Plaintiffs nowhere explain what was ambiguous about that statement, which is a catchphrase on "The Profit." Compl. ¶ 226. In any case, Plaintiffs do not explain how this catchphrase concealed something from them, and at the very least have not met Rule 9(b)'s particularity requirement. Accordingly, Plaintiffs' fraudulent concealment claims fail as a matter of law.

### 3. Plaintiffs' claim for deceptive practices in violation of GBL 349 (Count 7) fails because trademark infringement or unfair competition and private grievances do not give rise to such a claim.

Plaintiffs' GBL 349 claim fails New York law's requirements. Such a claim requires a showing that the defendant's conduct was "consumer-oriented," *i.e.*, "part of the defendant's effort to sell its services . . . to prospective" customers that was "deceptive in a material way" and caused injury to the plaintiff. *Gomez-Jimenez v New York Law School*, 103 A.D.3d 13, 16-17 (1st Dep't 2012). Lack of candor or failure to provide additional facts is not sufficient. *Id.* at 17.

Importantly, "section 349 is directed at wrongs against the consuming public," and "[p]rivate contract disputes, unique to the parties . . . [do] not fall within the ambit of the statute." *Oswego v. Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (1995); *see also Loeb v. Architecture Work, P.C.*, 154 A.D.3d 616, 616-17 (1st Dep't 2017). Claims of trademark infringement and unfair competition are also insufficient to state a GBL 349 claim as a matter of law. *DePinto v. Ashley Scott, Inc.*, 222 A.D.2d 288, 289 (1st Dep't 1995); *see also Solid 21, Inc. v. Richemont North Am., Inc.*, 2020 WL 3050970, at *8 (S.D.N.Y. June 8, 2020).

Here, Plaintiffs' GBL 349 claim is based exclusively upon allegations of trademark

infringement and unfair competition. Compl. ¶¶ 199-202. That, without more, requires dismissal of Plaintiffs' claim. Moreover, Plaintiffs do not point to any misconduct aimed at the general public in order to support this claim, but rather to a private dispute between Plaintiffs, the ML Defendants, and CWI regarding the alleged misuse of Plaintiffs' trademarks. *See id.* As set forth above, the private nature of the dispute is an additional basis for dismissal.

### 4. Plaintiffs' tortious interference claim (Count 13) fails.

Plaintiffs' tortious interference claim is speculative and lacks the specificity required by New York law. In order to plead such a claim, a plaintiff must allege: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382-83 (2d Cir. 2000). "[T]he complaint must allege 'interference with a specific[ally] identified business relationship with a third party,'" and therefore "[g]eneralized allegations of impairment to [claimant's] ability to attract new business will not suffice." *Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at *14-15 (S.D.N.Y. Apr. 16, 2007) (internal quotation marks omitted); *Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 515 F. Supp. 2d 298, 316 (N.D.N.Y. 2007) (reference to interference with relationship with a "customer" was too vague to constitute "a specific business relationship"). At bottom, a tortious interference claim cannot be "speculative," and the plaintiff must allege that it would have obtained the additional business "but for defendant's tortious interference." *Ferrarini v. Irgit*, 2020 WL 122987, at *8 (S.D.N.Y. Jan. 9, 2020) (dismissing tortious interference claim where plaintiff alleged that "[a]n economic relationship existed between [plaintiff] and third parties," as the allegations "do not identify the parties with whom Plaintiff had prospective, non-speculative economic relationships"); *see also D'Andrea v. Rafla-Demetrious*, 3 F. Supp. 2d 239, 251 (E.D.N.Y. 1996).

Here, Plaintiffs allege that the ML Defendants interfered with unidentified "customers" who were purportedly confused by the ML Defendants' and CWI's alleged trademark infringement and unfair competition. Compl. ¶¶ 255-61. Plaintiffs do not allege that this alleged conduct kept the unidentified "customers" from shopping with Plaintiffs, only that Plaintiffs' relations with these customers were "harmed" in some unspecified way. *Id.* These speculative allegations are insufficient to state a tortious interference claim: Plaintiffs have not identified the "customers," have not identified the purported "harm" to their business relationship with these "customers," and have not even attempted to allege that these "customers" did not shop at Plaintiffs' business, let alone that the "customers" would have done so but for the ML Defendants' alleged interference. Plaintiffs' claim should be dismissed.

### 5. Plaintiffs' unjust enrichment (Count 14) claim is barred.

Plaintiffs allege that the ML Defendants committed unjust enrichment by committing trademark infringement, *i.e.*, the same conduct underlying Plaintiffs' Lanham Act and state-law infringement and unfair competition claims. Compl. ¶¶ 264-68. As this Court has previously held, "an unjust enrichment cause of action is not permitted where it is duplicative of other avenues for relief, as is the case here with [Plaintiff's] multiple overlapping claims." *Manchanda v. Google*, 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016); *see also Koenig v. Boulders Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014). Accordingly, "courts in this circuit frequently dismiss unjust enrichment claims brought in Lanham Act cases" where the unjust enrichment claims are "duplicative" of the infringement and unfair competition claims. *Int'l Council of Shopping Ctrs., Inc. v. Global Infotech LLC*, 2019 WL 2004096, at *4 (S.D.N.Y. May 7, 2019) (collecting cases). In light of its duplicative nature, Plaintiffs' unjust enrichment claim should be dismissed.

**E.      Plaintiffs' civil RICO claim (Count 15) should be dismissed because Plaintiffs have not pled and cannot plead the elements of that claim, let alone with the requisite particularity.**

Plaintiffs' attempt to assert a civil RICO claim utterly fails.  "Because of the sanctions and stigma attendant to them, civil RICO claims are notoriously – and appropriately – difficult to plead." *Egerique v. Chowaiki*, 2020 WL 1974228, at *1 (S.D.N.Y. Apr. 24, 2020).  Courts strictly apply the pleading requirements of Rule 9(b) to civil RICO claims to avoid, *inter alia*, "unfairly stigmatiz[ing]" defendants and burdening federal courts with claims that have been improperly "reframed . . . as RICO actions because of the carrot of treble recovery and the availability of a federal forum."  *Plount v. Am. Home Assurance Co.*, 668 F. Supp. 204, 205-07 (S.D.N.Y. 1987). A civil RICO claim requires a plaintiff to plead that: "(i) the defendant has violated the substantive RICO statute [18 U.S.C. § 1962]; and (ii) the plaintiff was injured in his business or property by reason of a violation of Section 1962."  *Egerique*, 2020 WL 1974228, at *7.  "To make out a substantive RICO violation, in turn, a plaintiff must allege the (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity."  *Id.*

Plaintiffs' civil RICO claim fails for multiple reasons.  First, Plaintiffs have failed to allege an "enterprise" or the "predicate acts" required to show a pattern of "racketeering activity."  With respect to "enterprise," the Second Circuit "has long since rejected the idea that a RICO enterprise may consist merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant."  *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013); *Condos Bros. Constr. Corp. v. Main St Am. Assur. Co.*, 280 F. Supp. 3d 349, 354 (E.D.N.Y. 2017).  Moreover, "corporations that are legally separate but 'operate within a unified corporate structure' and [are] 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under § 1962(c)."  *Cruz*, 720 F.3d at 121.  Throughout the Complaint, Plaintiffs allege that Lemonis is trustee of the sole member of Marcus Lemonis, LLC, and that Marcus

Lemonis, LLC, acts only through him. Compl. ¶¶ 17, 22-25. In other words, Plaintiffs themselves affirmatively alleged both that the members of the enterprise are corporate defendants associating with their manager or agent, *i.e.*, Lemonis, and that Marcus Lemonis, LLC, is guided by a single corporate consciousness, *i.e.*, Lemonis. Accordingly, as a matter of law, the ML Defendants cannot be an "enterprise." *Cruz*, 720 F.3d at 121.

Moreover, Plaintiffs have alleged that the ML Defendants are alter egos of one another, *i.e.*, that they are legally a single entity. Compl. ¶¶ 22-25. For purposes of civil RICO, however, "a solitary entity cannot, as a matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise.'" *Cullen v. Margiotta*, 811 F.2d 698, 729-30 (2d Cir. 1987). Accordingly, even where alter ego allegations are "insufficient," a plaintiff cannot simultaneously allege that defendants are alter egos and also "are sufficiently separate such that [they] can be considered a distinct RICO 'enterprise.'" *Physicians Mut. Ins. Co. v. Greystone Servicing Corp, Inc.*, 2009 WL 855648, at *7 (S.D.N.Y. Mar. 25, 2009); *see Friedlander v. Rhoades*, 962 F. Supp. 428, 432 (S.D.N.Y. 1997) (allegation that members of the enterprise "are the alter egos" of the other enterprise member was "fatal to her RICO claim"). Plaintiffs cannot simultaneously claim that the ML Defendants are separate, distinct individuals and entities that are working together in an "enterprise" (in which case Plaintiffs' causes of action necessarily fail because they lump separate Defendants together without pleading specific acts by each, as set forth above) and claim that the ML Defendants are alter egos that are legally one entity (in which case they cannot be an "enterprise" and Plaintiffs' civil RICO claim fails).

Similarly, Plaintiffs affirmatively allege in a way fatal to their RICO claim that the other purported members of the "enterprise" are led by Lemonis or act on his behalf in the regular course of business. Plaintiffs allege that CWI is "co-owned" by Lemonis, who serves as CWI's "chairman

and CEO," and that Machete is the "agent" of the ML Defendants in connection with "The Profit." Compl. ¶¶ 16, 18, 19. Again, an employee or agent carrying out the regular business of a corporate defendant is not acting as part of an "enterprise." *Cruz*, 720 F.3d at 121. In short, Plaintiffs have not pled, and cannot plead, an "enterprise" here, and so their RICO claim must fail.

With respect to "racketeering activity," Plaintiffs' allegations fail on many levels. "The term 'racketeering activity' refers to the predicate acts necessary to sustain a RICO claim and includes mail fraud and wire fraud," while showing a pattern of racketeering activity requires two or more "predicate acts" within the span of 10 years. *Egerique*, 2020 WL 1974228, at *8. Importantly, "[w]hile federal wire and mail fraud constitute RICO predicate acts, common law fraud under state law does not." *Condos Bros.*, 280 F. Supp. 3d at 355. Plaintiffs must instead show that "defendant participated in a scheme to defraud victims of money or property, through the use of the mails or an interstate wire." *Id.* Plaintiffs must also "specify the time, place, speaker and content of the alleged misrepresentations." *Egerique*, 2020 WL 1974228, at *10.

Plaintiffs' allegations fall short of these requirements. As an initial matter, at least three of the alleged "predicate acts" are premised upon the same allegations as Plaintiffs' various, duplicative fraud-related causes of action, thus failing for the same reasons those claims fail. They are also simply common-law fraud claims, which do not support a civil RICO claim. *Condo Bros.*, 280 F. Supp. 3d at 355.

In any event, the supposed "predicate acts" fail as RICO claims. Plaintiffs allege four instances of what they purport to be "mail and wire fraud" or "trafficking." *See* Compl. ¶¶ 283-84. These fail as a matter of law because they fail to specify the fraudulent nature of the actions, or otherwise fail to "specify the time, place, speaker and content of the alleged misrepresentations."

*Egerique*, 2020 WL 1974228, at *10.[10]

First, Plaintiffs allege that Defendants "us[ed] the Internet in or around August 2016 to transmit the Alternate Term Sheet that gave Lemonis Defendants control over Bowery Kitchen's brand and intellectual property rights." Compl. ¶ 283(b)(ii). Plaintiffs do not explain who sent the documents or the means by which they did so, other than via "the Internet," and do not explain how sending documents that themselves did not contain any alleged misrepresentations constitutes mail or wire fraud. *See Condos Bros.*, 280 F. Supp. 3d at 355 (sending bills via mail and email not enough to constitute "predicate acts" where plaintiff did not identify any "fraudulent statement," or "who made it" and "why it is fraudulent").

Second, Plaintiffs allege that unspecified Defendants used "the Internet and telephone to make fraudulent representations . . . that the Lemonis Enterprise was helping these businesses while they were actually mismanaging them . . . ." Compl. ¶ 203(b)(iii). Again, these vague allegations do not state what was fraudulent about the alleged misrepresentation, who made the supposed misrepresentations, when the misrepresentations were made, how they were made (other than the vague reference to "the Internet and telephone"), or to whom they were made. *Id.*

Third, Plaintiffs allege that Defendants committed a predicate act by violating 18 U.S.C. § 2320, the federal law against trafficking counterfeit goods, through the sale of goods with a "counterfeit" version of Plaintiffs' trademark. Compl. ¶284(a)(i). But to establish this predicate act, Plaintiffs were required to plead, **with particularity**: (1) copying of a **registered** trademark; (2) that the counterfeit mark was **identical** to that registered mark; and (3) that the copier is used to pass off the infringer's product as the original, rather than merely in a manner that would confuse

---

[10] To the extent Plaintiffs claim that the allegations set forth in paragraphs 281 and 294 constitute "mail and wire fraud," Plaintiffs fail to identify who engaged in the supposed fraud, to whom the fraud was directed, or when each act of fraud was committed.

customers. 18 U.S.C. § 2320(f)(1); *Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*, 2019 WL 274967, at *3 (S.D.N.Y. Jan. 7, 2019); *see also, e.g., Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 631 & n.134 (S.D.N.Y. 2006). Plaintiffs do not allege any of those elements here, *see* Compl. ¶¶ 105-110, 284(a)(i), and the only actual facts regarding the supposedly improper use of the mark alleged by Plaintiffs were that the use occurred in June-July 2017, **before** the mark was registered in November 2017. *Id.* ¶¶ 38, 105-110. Moreover, the marks allegedly used by CWI were not identical, or even substantially identical, to Plaintiffs' alleged trademark, since the marks allegedly used by CWI did not include the text "Where the Chefs Shop[,]" which is a prominent feature of Plaintiffs' registered mark. *Id.* In short, Plaintiffs fail to allege a violation of the criminal counterfeiting statute, and appear to simply be rehashing their infringement and unfair competition claims. Of course, "allegations of trademark infringement are not cognizable as a RICO predicate act." *Helios Int'l S.A.R.L. v. Catnamessa USA, Inc.*, 23 F. Supp. 3d 173, 191 (S.D.N.Y. 2014); *Evercrete Corp.*, 429 F. Supp. 2d at 631.

Fourth, Plaintiffs allege that Defendants, and specifically Machete, used "Skype around March 2016 to make representations [to Plaintiffs] that Lemonis could help their business move to the next level, that the deals Lemonis makes on the show are real, and that the businesses Lemonis helps on the show are real and thriving." Compl. ¶ 283(b)(i). Here, Plaintiffs once again fail to allege why these statements were false. But even if this inadequate allegation met the particularly requirement, a single well-pled predicate act, standing alone, does not constitute a pattern of racketeering activity. *Egerique*, 2020 WL 1974228, at *8 (pattern requires two or more predicate acts); *Evercrete*, 429 F. Supp. 2d at 631. Accordingly, Plaintiffs' allegations fail to demonstrate either predicate acts or a pattern of racketeering necessary for a RICO claim.

Because Plaintiffs fail to sufficiently allege facts to support their RICO claim, the claim

should be dismissed.

**F.    Plaintiffs' claim for declaratory judgment fails because they have failed to plead an actual justiciable controversy to be resolved by the Court.**

The Court should also dismiss Plaintiffs' declaratory judgment cause of action because Plaintiffs fail to allege "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996). Here, there is no live controversy regarding the agreement. Plaintiffs' business closed, their relationship with the ML Defendants allegedly ended in August 2017. Compl. ¶¶ 110, 118. Plaintiffs have not alleged the use of their alleged trademark after 2017. *Id.* ¶¶ 106-10. Since there is no ongoing business relationship between the parties and no allegations of ongoing misconduct pursuant to the alleged agreement that can be credited on a motion dismiss, there is no controversy for the Court to resolve. *Park v. Citizen's Bank, N.A.*, 2019 WL 5569680, at *5 (S.D.N.Y. Oct. 29, 2019); *Hill v. Berkman*, 635 F. Supp. 1228, 1242 (E.D.N.Y. 1986).

**G.    Leave to amend should be denied.**

To the extent Plaintiffs request any further amendment, it should be denied because any amendment would be futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). Here, Plaintiffs' amendments would be futile because, as set forth above, the Complaint is fatally flawed in numerous respects, and the ML Defendants submit that there are no additional facts Plaintiffs could plead while still complying with Rule 11. Indeed, Plaintiffs have already filed an amended Complaint, and, despite making allegations that already span 80 pages and 304 paragraphs, Plaintiffs were unable to meet their pleading burden. If Plaintiffs were able to cure the pleading defects, they presumably would have done so. Plaintiffs' failure is

particularly telling because Plaintiffs' counsel represents different plaintiffs in a lawsuit against the ML Defendants before another court in this District, which is subject to a pending motion to dismiss that raises a number of arguments identical to those presented in this motion, including with respect to group pleading, the economic loss doctrine and the bar on converting contract claims into tort claims, and the "enterprise" and predicate act requirements of civil RICO claims. *Goureau, et ano. v. Lemonis, et al.*, Case No. 20-cv-4691-MKV, ECF No. 45. Despite amending the Complaint once already, Plaintiffs nevertheless failed to correct these fatal defects, confirming that Plaintiffs cannot do so. The Court should not permit him to replead futile claims.

## IV.  CONCLUSION

Defendants Marcus Lemonis and Marcus Lemonis, LLC respectfully request the Court grant their Motion to Dismiss and for the Court to dismiss all causes of action against the ML Defendants, with prejudice. Defendants request all further relief to which they may be entitled.

Dated:  December 16, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By:  */s/ Owen R. Wolfe*

Michael D. Wexler
(*admitted pro hac vice*)
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman
(*admitted pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas  77002
Telephone: (713) 238-1805

Owen R. Wolfe (OW1931)
620 Eighth Avenue
New York, New York  10018
Telephone: (212) 218-5500

*Attorneys for Defendants*
*Marcus Lemonis and Marcus Lemonis, LLC*