**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HOWARD NOURIELI, an individual, and BOWERY KITCHEN SUPPLIES, INC., a New York corporation, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 20-cv-8233-JPO |
| v. | : : | |
| MARCUS LEMONIS, an individual, MARCUS LEMONIS, LLC, a Delaware limited liability company, CAMPING WORLD HOLDINGS, INC., a Delaware corporation, and MACHETE CORPORATION d/b/a/ MACHETE PRODUCTIONS, a California corporation; and DOES 1 through 10, inclusive, | : : : : : : : | |
| Defendants, | : : : : : : : | |

**PLAINTIFFS'**
**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MACHETE**
**CORPORATION'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT ................................................................................................................... 5

  I.  MACHETE HAS NOT SHOWN THAT THE RELEASE AGREEMENTS FORECLOSE
     PLAINTIFFS' CLAIMS ............................................................................................. 5

    A. Machete articulates no legal standard and fail to establish why New York law should
       apply to waivers with California choice of law provisions. ................................. 5

    B. The releases do not apply because Plaintiffs have properly stated claims for fraud in the
       inducement. ........................................................................................................ 6

    C. Even if the Release Agreements stand, they would not release the remaining intentional
       torts in Plaintiffs' claim. ................................................................................... 10

  II. PLAINTIFFS SUFFICIENTLY STATED ALL CLAIMS UNDER THE APPROPRIATE
     LEGAL STANDARD ............................................................................................. 11

    A. Plaintiffs sufficiently pleaded fraud with the specificity required by Rule 9(b). ............... 11

    B. Plaintiffs' claim for civil RICO is sufficiently pled for all defendants. ............................ 19

    C. Plaintiffs plead facts showing that Machete acted as an agent of Lemonis. ...................... 23

LEAVE TO AMEND ...................................................................................................... 24

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co.*,
    96 F.Supp.3d 182 (S.D.N.Y. 2015) .................................................................................. 6, 11

*Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*,
    54 N.Y.S.3d 609 (N.Y. Sup. 2016) ...................................................................................... 18

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 327 (S.D.N.Y. 2010) ................................................................................. 24

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ................................................................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 4

*Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
    268 F.3d 103 (2d Cir.2001) .................................................................................................. 20

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
    980 N.Y.S.2d 21 (2014) ........................................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 4, 5

*Bertuglia v. City of New York*,
    839 F. Supp. 2d 703 (S.D.N.Y. 2012) ................................................................................... 5

*Blankenheim v. E. F. Hutton & Co.*,
    217 Cal. App. 3d 1463 (Ct. App. 1990) ......................................................................... 11, 13

*Boyle v. United States*,
    556 U.S. 938 (2009) ............................................................................................................. 21

*Brown v. Cerberus Capital Mgmt.*,
    104 N.Y.S.3d 62 (2019) ......................................................................................................... 9

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996) ................................................................................................. 16

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir.1989) ...................................................................................................... 16

*Danann Realty Corp. v. Harris*
  5 N.Y.2d 317, 323 (1959) ................................................................................ 10

*Designer Limousine, Inc. v. Auth. Transportation, Inc.*,
  110 N.Y.S.3d 133 (2019) ................................................................................ 18

*Deswal v. U.S. Nat. Ass'n*,
  603 F. App'x 22 (2d Cir. 2015) ....................................................................... 23

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ........................................................................... 12

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  726 F.Supp.2d 225 (E.D.N.Y.2010) ............................................................... 19

*Elbit Sys., Ltd. v. Credit Suisse Grp.*,
  917 F. Supp. 2d 217 (S.D.N.Y. 2013) ............................................................ 24

*Essex Capital Corp. v. Garipalli*,
  2018 WL 6618388 (S.D.N.Y. Dec. 18, 2018) ................................................ 23

*Fasig-Tipton Co. v. Jaffe*,
  449 N.Y.S.2d 268 (App. Div. 2nd Dept. 1982) .............................................. 8

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir.1994) ................................................................................ 19

*Greene v. Gerber Prod. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................ 15, 16, 17

*Greenway II, LLC v. Wildenstein & Co. Inc.*,
  2019 WL 11278321 (S.D.N.Y. Oct. 8, 2019) ................................................ 16

*Hinesley v. Oakshade Town Ctr.*,
  135 Cal. App. 4th 289 (2005) ............................................................................ 7

*Holmes v. Secs. Investor Prot. Corp.*,
  503 U.S. 258 (1992) .......................................................................................... 22

*Hughes v. Ester C Co.*,
  930 F.Supp.2d 439 (2013) ............................................................................... 17

*Hyung Jin Moon v. Hak Ja Han Moon*,
  431 F. Supp. 3d 394 (S.D.N.Y. 2019) ............................................................ 22

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
   538 U.S. 600 (2003) ........................................................................... 23

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009) ............................................................... 16

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998) ................................................................. 23

*In re S. African Apartheid Litig.*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) ................................................ 23

*In re Sumimoto Copper Litig.*,
   995 F.Supp. 451 (S.D.N.Y.1998) ........................................................ 20

*Jackson v. Onondaga Cty.*,
   549 F. Supp. 2d 204 (N.D.N.Y. 2008) .................................................. 4

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
   16 N.Y.S.3d 229 (2015) ................................................................. 9, 13

*Laub v. Faessel*,
   745 N.Y.S.2d 534 (2002) ................................................................... 18

*Lawati v. Montague Morgan Slade Ltd.*,
   961 N.Y.S. 2d 5 (2013) ...................................................................... 17

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
   10 F. Supp. 3d 504 (S.D.N.Y. 2014) ................................................... 10

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138 (2d Cir. 2013) ................................................................. 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ............................................................... 25

*Lynch v. City of New York*,
   952 F.3d 67 (2d Cir. 2020) ........................................................ 4, 5, 11

*Manderville v. PCG&S Grp., Inc.*,
   146 Cal. App. 4th 1486 (2007) ....................................................... 7, 8, 13

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
   137 F. Supp. 3d 430 (S.D.N.Y. 2015) ................................................ 21

*MBIA Ins. Co. v. GMAC Mortg. LLC,*
    914 N.Y.S. 2d 604  (N.Y. Sup. 2010) .................................................................. 12

*McColgan v. Mut. of Omaha Ins. Co.,*
    4 F. Supp. 3d 1228 (E.D. Cal. 2014) ................................................................... 7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC,*
    798 N.Y.S.2d 14 (App. Div. 1st Dept. 2005) ................................................. 7, 9

*Milanese v. Rust-Oleum Corp.,*
    244 F.3d 104 (2d Cir. 2001) ............................................................................... 25

*Minnie Rose LLC v. Yu,*
    169 F. Supp. 3d 504 (S.D.N.Y. 2016) ........................................................... 12, 15

*Moss v. BMO Harris Bank, N.A.,*
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ................................................................ 20

*Nat'l Org. for Women, Inc. v. Scheidler,*
    510 U.S. 249 (1994) ............................................................................................ 22

*New York Islanders Hockey Club, LLP v. Comerica Bank--Texas,*
    71 F. Supp. 2d 108 (E.D.N.Y. 1999) ............................................................. 15, 19

*Pac. Controls, Inc. v. Cummins Inc.,*
    2019 WL 6830790 (S.D.N.Y. Dec. 13, 2019) ...................................................... 6

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.,*
    460 F. Supp. 3d 481 (S.D.N.Y. 2020) ........................................................ 4, 12, 15

*Plumley v. Massachusetts,*
    155 U.S. 461 (1894) ............................................................................................ 23

*Psenicska v. Twentieth Century Fox Film Corp.,*
    2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008) ........................................................ 9

*Rana v. Islam,*
    305 F.R.D. 53, 58 (S.D.N.Y.2015) ...................................................................... 12

*Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n,*
    55 Cal.4th 1169 (2013) .................................................................................... 8, 13

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.,*
    32 Cal. App. 4th 985 (1995) ................................................................................. 8

*Sabo v. Delman,*
   3 N.Y.2d 155 (1957) ............................................................................. 8, 14

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479 (1985) ............................................................................. 20

*Siben v. Am. Airlines, Inc.,*
   913 F. Supp. 271 (S.D.N.Y. 1996) ...................................................... 16, 17

*Skanga Energy & Marine Ltd. v. Arevenca S.A.,*
   875 F. Supp. 2d 264 (S.D.N.Y. 2012) ................................................ 24

*Speedmark Transp., Inc. v. Mui,*
   778 F. Supp. 2d 439 (S.D.N.Y. 2011) ................................................ 6

*Stamelman v. Fleishman-Hillard, Inc.,*
   2003 WL 21782645 (S.D.N.Y. July 31, 2003) ................................... 15

*Stewart v. Jackson & Nash,*
   976 F.2d 86 (2d Cir. 1992) .................................................................. 14

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC,*
   648 F.3d 68 (2d Cir. 2011) .................................................................. 12

*United States v. Rybicki,*
   354 F.3d 124 (2d Cir. 2003) ................................................................ 23

*Williams v. Citigroup Inc.,*
   659 F.3d 208 (2d Cir. 2011) ................................................................ 25

**Statutes**

18 U.S.C. § 1341 ...................................................................................... 21

18 U.S.C. § 1962 ...................................................................................... 19

18 U.S.C. § 1964 ...................................................................................... 19

Cal. Civ. Code § 1668 ............................................................................. 7, 11

**Rules**

Fed. R. Civ. P. 8 ...................................................................................... 3, 4, 11

Fed. R. Civ. P. 9 ...................................................................................... passim

Fed. R. Civ. P. 12 .................................................................................... 4, 5, 11, 24

Fed. R. Civ. P. 15 .................................................................................... 25

## PRELIMINARY STATEMENT

Plaintiffs Howard Nourieli ("Howard") and Bowery Kitchen Supplies Inc. ("Bowery Kitchen") (collectively, "Plaintiffs"), hereby submit their memorandum of law in opposition to Defendant Machete Corporation d/b/a/ Machete Productions' ("Machete") Motion to Dismiss. Other defendants in the action include Marcus Lemonis ("Lemonis"), Marcus Lemonis, LLC (ML LLC) (together, the "ML Defendants"), CWI, Inc. ("Camping World"), and DOES 1 through 10 ("DOE Defendants") (all collectively with Machete, "Defendants"). As set forth below, Plaintiffs have properly alleged the claims in their First Amended Complaint ("FAC") and Machete's motion should be denied.[1]

## STATEMENT OF FACTS

The facts of this case are fully established in Plaintiffs' FAC, but Plaintiffs provide a brief summary here. Bowery Kitchen was originally founded by Howard's family in 1975 on Bowery Street in New York City. (FAC ¶ 30.) It focused on selling heavy kitchen equipment and appliances. (*Id.*) In 1990, Howard decided to open his own Bowery Kitchen and expanded its customer base and selection, offering kitchen supplies to restaurants, cooking enthusiasts, professional chefs, and at-home chefs. (FAC ¶ 31.) In 1996, Howard together with his high school sweetheart and 50 percent business partner Robyn Coval ("Robyn") moved the Bowery Kitchen store to Chelsea Market in Lower Manhattan. (FAC ¶ 32.) Like many small-business owners, Howard and Robyn poured their hearts and souls into Bowery Kitchen. Their hard work was rewarded, and Bowery Kitchen received accolades from celebrities, television shows, and the New York Times. (FAC ¶ 34.)

---

[1]    All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted. All "Ex." References are to the documents attached to Plaintiffs' First Amended Complaint.

By 2016 Bowery Kitchen was already a successful business, generating over $3 million in annual revenue. (FAC ¶ 35.) Although Bowery Kitchen was successful, Howard wished to expand to other locations and other revenue streams. (*See* FAC ¶ 52.) One step Howard took in preparation was to have a logo created and trademarked. (FAC ¶¶ 36-38.) However, Howard and Robyn needed someone with expertise and experience to help the company expand. This is exactly the type of expert who Defendant Marcus Lemonis ("Lemonis") portrays on the television show, "The Profit," produced by Defendant Machete. (FAC ¶¶ 39-42.)

In "The Profit," Lemonis appears to invest in small, family-run businesses and use his expertise to help them expand and become more successful. (*Id.*) However, this is merely a facade, as Lemonis, in actuality, preys on businesses and seizes their tangible and intangible property for his own gain. (FAC ¶ 43-46.) Machete develops and produces "The Profit." (FAC ¶ 18.) Machete, acting on ML Defendants' behalf, seeks out targets for the scam and vets them before they appear on the show. (FAC ¶ 48.) Lemonis and various corporate entities associated with him take advantage of the relative lack of sophistication of small, family-run businesses; together, ML Defendants structure complicated agreements involving secured debt and one-sided contracts combined with Lemonis' wealth to exploit the hard work of the business owners for his own gain. (*See* FAC ¶¶ 43-46). Owners are left with little else besides a feeling of shame for allowing themselves to be exploited, all while the events are filmed and selectively edited to portray whatever story ML Defendants and Machete want to tell, broadcasted on national television. (*See* FAC ¶¶ 66, 83, 118-19.)

On October 18, 2016, Bowery Kitchen was featured on an episode of "The Profit." (FAC ¶ 66.) In order to convince Plaintiffs to appear on the show, Machete and other Defendants made several misrepresentations to Plaintiffs. (FAC ¶¶ 47-64.) Defendant Machete conducted phone

calls and Skype calls with Plaintiffs telling them that Lemonis truly helps the businesses that appeared on the show and that he could and would help their business go to the next level. (FAC ¶ 48, 54.) Howard and Robyn were hesitant at first, but later calls from Machete emphasized how much Lemonis liked Howard and Robyn and worked to alleviate any concerns. (FAC ¶¶ 56-57.) Lemonis himself also called to convince Howard and Robyn to appear on the show. (FAC ¶ 62.) Finally, based upon ML Defendants' and Machete's misrepresentations and enamored with the thought of being on national television and growing their company, Plaintiffs agreed to appear on the show. (*See* FAC ¶¶ 47-64.)

In the episode, Lemonis offered to invest in the business by acquiring a 33.3 percent interest in Bowery Kitchen for $350,000 (FAC ¶ 68); however, Lemonis quickly abandoned the aired "deal" (FAC ¶ 71). This did not stop Lemonis from taking over the business, liquidating the company's inventory at fire sale prices, and leaving the store closed for over a month while performing renovations. (FAC ¶ 74-82.) Ultimately, Lemonis forced Plaintiffs, and even Bowery Kitchen employees, into unrecoverable debt. (*See* FAC ¶¶ 91.) After ML Defendants and Machete left Plaintiffs in shambles, other companies owned, and/or controlled, by Lemonis began using Bowery Kitchen's trademarks illegally. (FAC ¶¶ 19, 105.) Not only did these companies, including Camping World, profit from Bowery Kitchen's trademark and reputation, they ultimately caused irreparable harm to Plaintiffs' reputation. (*See* FAC ¶¶ 105-107.) Defendants knowingly and intentionally made false representations that they would be help Plaintiffs—that it would be a partnership. (FAC ¶ 71.) In reality, Defendants profited while setting Plaintiffs up to fail. (*See* FAC ¶¶ 118-119.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a complainant to provide "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008). Rule 12(b)(6) allows a defendant to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P. 12 (b)(6).

Allegations of fraud within a complaint "must satisfy the heightened pleading requirements of Rule 9(b) by stating the circumstances constituting fraud with particularity." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 491 (S.D.N.Y. 2020). However, "Rule 9(b)'s heightened particularity requirement does not apply to allegations regarding fraudulent intent, also known as scienter, which may be alleged generally." *Id.*

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) where the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[I]n deciding a Rule 12(b)(6) motion to dismiss a complaint, [the Court] is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679). The court also must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Id.* (quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Id.* (quoting

*Twombly*, 550 U.S. at 556). In other words, the Court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012). Under this standard, Defendants' motion must be denied.

## ARGUMENT

### I.    MACHETE HAS NOT SHOWN THAT THE RELEASE AGREEMENTS FORECLOSE PLAINTIFFS' CLAIMS[2]

Machete argues that the Release Agreements (Dkt. 46-2; Dkt. 46-3) sufficiently waive all of Plaintiffs' claims (Dkt. 45 p.4), yet this argument fails for myriad reasons. First, Machete fails to establish *any* legal standard and fails to argue choice of law. Second, Plaintiffs have sufficiently pleaded fraud in the inducement of the Release Agreements, rendering the releases unenforceable. Finally, even if the waivers in the Release Agreement were enforceable, they could not encompass Plaintiffs' intentional tort claims and other remaining claims.

### A.  Machete articulates no legal standard and fail to establish why New York law should apply to waivers with California choice of law provisions.

In its eagerness to jump into the merits of its argument, Machete fails to establish any type of legal standard for its arguments about the Release Agreements. (*See* Dkt. 45 p.4.) Plaintiffs are left to assume that Machete intends its arguments concerning the validity of the waivers to be held to the typical Rule 12(b)(6) standard, which require Plaintiffs only to establish a plausible claim for relief, and require the Court to accept Plaintiffs' factual claims as true and construe inferences in Plaintiffs' favor. *See Lynch*, 952 F.3d at 74–75.

Machete then immediately begins to cite New York state court cases without first

---

[2]      Machete refers to two release agreements in their motion—one signed on behalf of Bowery Kitchen (Dkt. 46-2.) and one signed by Howard individually (Dkt. 46-3.) (together, the "Release Agreements"). Plaintiffs disagree with Machete's assertion that Plaintiffs' claims solely rely on the Release Agreements but do not dispute that the Court may consider them on a 12(b)(6) motion. (See Dkt 45 n.3.)

articulating *why* New York state law should apply and to what degree. (Dkt. 45 p.5.) The applicability of New York state law is critical because the Release Agreements contain California choice of law provisions. (Dkt. 46-2 ¶ 24; Dkt. 46-3 ¶ 17.) If Machete believes that only New York state law applies, then it was obliged to argue why California law should not apply.[3] Because Machete fails to do so, Plaintiffs need only state a plausible claim under ***either*** New York law ***or*** California law.[4] *See Pac. Controls, Inc. v. Cummins Inc.*, 2019 WL 6830790, at *6 (S.D.N.Y. Dec. 13, 2019) (noting that because defendant did not brief the applicability or extent of a choice of law provision, plaintiff's related tort claims could not be dismissed unless the claims were clearly insufficient under the laws of both states).

Federal district courts generally apply the forum state's choice of law rules to state law claims. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013). District courts in New York, then, will examine the scope and applicability of a choice of law provision under New York law. *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co.*, 96 F.Supp.3d 182, 211 (S.D.N.Y. 2015). In turn, "New York law provides that as a general matter, the parties manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored. It is as though the law of the selected jurisdiction were incorporated into the agreement by reference.'" *Id.*

### B. The releases do not apply because Plaintiffs have properly stated claims for fraud in the inducement.

Plaintiffs have sufficiently claimed fraud in the inducement, which is an attack on the

---

[3]    If Machete believes that the Release Agreements are valid, then it is unclear why it choose to ignore the choice of law provisions, particularly when the agreement is "deemed to be entered into in Los Angeles County, California." (Dkr. 46-2, ¶ 24.) That phrase alone suggests that California law should apply to Plaintiffs' fraud in the inducement claim.

[4]    The Court may elect to determine the choice of law at a later time when more facts are available. *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (declining to determine the choice of law while denying a motion to dismiss). It is enough for purposes this motion that either law could apply.

Release Agreements themselves. Whether under New York law or California law, neither Machete nor the other defendants may enforce the releases because the agreements themselves are fraudulent. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*, 798 N.Y.S.2d 14, 16 (App. Div. 1st Dept. 2005) ("A contract induced by fraud . . . is subject to rescission, rendering it unenforceable by the culpable party."); *Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1501 (2007) ("Because the fraud renders the entire contract voidable, the clause intended to absolve the [defendant] from liability is also voidable.").

New York and California share similar required elements for a claim stating fraud in the inducement.[5] Here, Plaintiffs meet the standards established by both states when they claim that Defendants, including Machete, made materially false misrepresentations (FAC ¶ 219), that Defends knew was false (FAC ¶ 220), with the intent of inducing reliance (FAC ¶¶ 221, 223). Plaintiffs then justifiably relied on these representations when signing the agreement (FAC ¶ 222), resulting in extensive damage to Plaintiffs (FAC ¶ 224).

### 1. *California law unequivocally could not have allowed Plaintiffs to release fraudulent inducement claims.*

Machete argues that New York law forecloses Plaintiffs' claims due to waiver but never addresses California law. However, under California law, Plaintiffs could never have waived any induced fraud claims. "It is well-established in California that a party to a contract is precluded under [Cal. Civ. Code] section 1668 from contracting away his or her liability for fraud or deceit based on intentional misrepresentation." *Manderville*, 146 Cal. App. 4th at 1500. Waiver of

---

[5]    *Compare Merrill Lynch*, 798 N.Y.S.2d at 16. ("To state a cause of action for fraudulent inducement, it is sufficient that the claim alleges a material representation, known to be false, made with the intention of inducing reliance, upon which the victim actually relies, consequentially sustaining a detriment."), *with McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233 (E.D. Cal. 2014) ("A claim for fraud in the inducement requires the following elements: '(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage.'") (citing *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005)).

induced fraud is simply impossible under California law, even "a contract clause stating the parties relied only on representations contained in the contract does not bar, as a matter of law, a claim for intentional misrepresentation." *Id.* (referencing *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 989 (1995)). Additionally, parol evidence is always permitted to prove fraud.[6] *See Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n*, 55 Cal.4th 1169, 1174 (2013) ("[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud."). In short, whatever its form, any attempt to waive fraud in the inducement "will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision." *Manderville*, 146 Cal. App. 4th at 1501.

### 2. *Even under New York law, Plaintiffs did not release any claim to fraud in the inducement.*

New York law is stricter than California, but even under New York law the Release Agreements could not extend to Plaintiffs' fraud in the inducement claim. Like California, in New York, generally "the parol evidence rule has no application in a suit brought to rescind a contract on the ground of fraud. In such a case, it is clear, evidence of the assertedly fraudulent oral misrepresentation may be introduced to avoid the agreement." *Sabo v. Delman*, 3 N.Y.2d 155, 161 (1957). However, in certain circumstances, merger clauses can limit a court's inquiry. *See Fasig-Tipton Co. v. Jaffe*, 449 N.Y.S.2d 268, 269 (App. Div. 2nd Dept. 1982) ("[A] merger clause containing a *specific* disclaimer of the *very representations* upon which a cause of action in fraud is predicated will preclude inquiry into the alleged representations because there could be no reliance"). A ***general*** merger clause, though, "does not operate to bar parol evidence of fraud in

---

[6]      The parol evidence rule "is not a rule of evidence but one of substantive law." *Riverisland Cold Storage*, 55 Cal. 4th at 1174 (2013).

the inducement; only where the parties expressly disclaim reliance on the **_particular_**

**_misrepresentations_** is extrinsic evidence barred." *Merrill Lynch*, 798 N.Y.S.2d at 16. Indeed,

"[w]here a merger clause is 'generally [sic] and vague,' i.e., merely an omnibus statement that the

written instrument embodies the whole agreement, or that no representations have been made, the

merger does not preclude parole [sic] evidence establishing fraudulently inducement to enter into

the contract. *Laduzinski v. Alvarez & Marsal Taxand LLC*, 16 N.Y.S.3d 229, 233 (2015).

In its fraudulent inducement claim, Plaintiffs point to four of the statements that were

among those upon which Plaintiffs relied.[7] Machete claims that the sections of the Release

Agreement quoted in its brief specifically disclaim these statements, yet nowhere does Machete

specifically disclaim reliance on the *specific* facts upon which Plaintiffs relied. (*See* Dkt. 45, pp.

9-10.) In other words, this is exactly the type of boilerplate merger clause that does not preclude

parol evidence establishing fraudulent inducement. *See, e.g., Brown v. Cerberus Capital Mgmt.*,

104 N.Y.S.3d 62, 64 (2019) (finding that a boilerplate merger clause does not preclude parol

evidence establishing fraud in the inducement of a contract). Because the law allows evidence to

support Plaintiffs' fraudulent inducement claim, the claim is legally plausible, and the Court should

deny Machete's motion to dismiss.

Machete relies on *Psenicska v. Twentieth Century Fox Film Corp.*, 2008 WL 4185752, at

\*6 (S.D.N.Y. Sept. 3, 2008), aff'd, 409 F. App'x 368 (2d Cir. 2009). In *Psenicska*, the plaintiffs

signed releases to be portrayed in the film *Borat*. They were allegedly told that the film was a real

documentary about a real immigrant, when in actuality the film involved a comedian who

---

[7]     These consist of the following: "(1) Machete representing to Plaintiffs that Defendant Lemonis helps small businesses and that Lemonis would help Plaintiffs' business by appearing on The Profit; (2) Machete representing to Plaintiffs that the offer made on the show was real and a true negotiation; (3) Lemonis representing to Plaintiffs that he was interested in helping Plaintiffs' business succeed and believed in their business; and (4) Lemonis representing that he was not in the business of making people look bad on television." (FAC ¶ 219.)

embarrassed people on film. The court rejected a claim of fraudulent inducement, noting the language in the release disclaimed reliance upon "any promises or statements made by anyone about the *nature* of the Film or the *identity* of any other Participants or persons involved in the Film." *Id.* Invoking *Danann Realty Corp. v. Harris*, the court noted that "specificity was the touchstone of the disclaimer in *Danann*." *Id.* (citing 5 N.Y.2d 317, 323 (1959)). The court determined that the disclaimer language about the *nature* of the film and *identity* of the people specifically addressed the *exact statements* the plaintiffs believed to be fraudulent, preventing reasonable reliance on those false statements. That is not the case here.

Moreover, under New York law, "reliance on facts within [Defendants'] peculiar knowledge is justified 'even if the disclaimers and disclosures were . . . sufficiently specific.'" *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 517 (S.D.N.Y. 2014) (quoting *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 980 N.Y.S.2d 21, 29 (2014)). A defendant has peculiar knowledge "when the plaintiff has no independent means of ascertaining the truth," and "undisclosed intent to willfully misrepresent facts is generally deemed peculiar knowledge." *Id.* at 517-19. Here, Machete and other Defendants knew the facts about Lemonis and "The Profit," and Plaintiffs had no independent means of obtaining them. Because the clause disclaiming reliance is general, and the Defendants had peculiar knowledge of facts misrepresented (including their undisclosed intent), the motion to dismiss must be denied.

### C. Even if the Release Agreements stand, they would not release the remaining intentional torts in Plaintiffs' claim.

The Release Agreements could not have released the remaining intentional tort claims, regardless of the language of the waivers. Even if the Court determines that New York law applies to the fraudulent inducement claim, *and* that under New York law Plaintiffs waived their inducement claims, the Release Agreements and the scope of the waivers would still be governed

by California law. *See, e.g., Alaska Trust*, 96 F.Supp.3d at 211. California law explicitly prohibits releasing claims for fraud and other intentional acts. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."); *Blankenheim v. E. F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1471–72 (Ct. App. 1990) ("Under [Section 1668], a party may not contract away liability for fraudulent or intentional acts or for negligent violations of statutory law.").

Because the Release Agreements are "governed by and interpreted in accordance with the substantive laws of the State of California" (Dkt. 46-2, ¶ 24; Dkt. 46-3, ¶ 17), the waivers they contain could not possibly extend to any of Defendants' intentional acts of fraud and other violations of the law as outlined in Plaintiffs' FAC. Machete has therefore failed to show why Plaintiffs' claims would not be plausible, and its motion to dismiss must be denied.

## II.    PLAINTIFFS SUFFICIENTLY STATED ALL CLAIMS UNDER THE APPROPRIATE LEGAL STANDARD

Plaintiffs' FAC sufficiently states all of its claims when held to the applicable Rule 12(b)(6) motion standards. Plaintiffs' claims meet the requirements of Rule 8(a)(2) notice pleading, and when applicable, the Rule 9(b) pleading standards with regard to claims involving fraud. Plaintiffs need ***not*** establish that their claims are *probable* at the pleading stage, ***but only*** that their claims are *plausible* enough to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *Lynch*, 952 F.3d at 74–75. Plaintiffs sufficiently pleaded its fraud claims under the required standard; Plaintiffs' civil RICO claim meets all of the necessary pleading requirements; and Plaintiffs pleaded facts demonstrating that Machete acted as an agent of ML Defendants.

### A.  Plaintiffs sufficiently pleaded fraud with the specificity required by Rule 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure establishes a heightened pleading

standard for allegations involving fraud, whereby Plaintiffs must state the circumstances constituting fraud with particularity. *Pilkington N. Am., Inc.*, 460 F. Supp. 3d at 491. Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). To be sure, "a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y.2015). Here, Plaintiffs' FAC contains allegations sufficient to give Machete fair and reasonable notice of Plaintiffs' claims against it and other Defendants.[8]

### 1. Whether Plaintiffs' reliance was reasonable is a question of fact and Plaintiffs state plausible claims.

Repeating its earlier arguments, Machete argues that Plaintiffs could not have reasonably relied on statements outside of the Release Agreements for its fraud claims, but as established above (*supra* pp. X-X) the Release Agreements are invalid and unenforceable because they were induced by fraud.

Whether Plaintiffs have justifiably relied on Defendants' misrepresentations "involve[s] many factors to consider and balance, no single one of which is 'dispositive' . . . . Accordingly, reasonable reliance is often a question of fact for the jury rather than a question of law for the court." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011); *see also MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S. 2d 604, 608 (N.Y. Sup. 2010) (in action

---

[8]    Although the choice of law issue has not been decided, Plaintiffs at this stage need only show they stated plausible claims for relief in their FAC. Therefore, Plaintiffs will generally focus on addressing Machete's arguments based in New York law.

involving motion to dismiss fraud claim on grounds that plaintiff could not have justifiably relied

on such misrepresentation, court denied motion because "[r]easonable reliance is a fact intensive

inquiry, which should be reserved for a trier of fact").

In this instance, Plaintiffs would be able to introduce parol evidence to support their fraud

in the inducement claim, which is the only fraud claim that the Release Agreements could possibly

apply to. The merger clauses in the Release Agreements are general, vague, and "merely an

omnibus statement that the written instrument embodies the whole agreement, or that no

representations have been made" such that it does not preclude parol evidence. *See Laduzinski*, 16

N.Y.S.3d at 233 (2015).

Moreover, the Release Agreements are governed and interpreted by "the substantive laws

of the State of California." (Dkt. 46-2, ¶ 24; Dkt. 46-3, ¶ 17.) The ***scope*** of any waivers is therefore

governed by California law, and California law does not allow waiver of *any* fraud claims. *See*

*Blankenheim v. E. F. Hutton & Co.*, 217 Cal. App. 3d at 1471–72. Finally, California law always

allows parol evidence for fraud claims, *Manderville*, 146 Cal. App. 4th at 1501, and California's

parol evidence rule is "substantive law," not procedural law. *Riverisland Cold Storage*, 55 Cal. 4th

at 1174 (2013). Thus, contrary to Machete's assessment, Plaintiffs' fraud claims are sufficiently

pleaded, and reliance is *not* unreasonable as a matter of law, whether California or New York law

applies. The complaint is sufficient, and Machete's motion to dismiss should be denied.

### 2.  *Plaintiffs articulate particularized allegations to Machete throughout the FAC.*

Machete argues that Plaintiffs have not alleged the "who" element in its fraud claims with

respect to Machete. In doing so, Machete manages to selectively overlook much of the FAC. Each

separate claim incorporates the paragraphs preceding the claim, including the Facts section. (*See,*

*e.g.,* FAC ¶¶ 204, 215.) For instance, Machete cites FAC ¶ 216 to claim that Plaintiffs merely

assert claims against "defendants," but that paragraph is clearly a summary. Earlier in the

complaint, Plaintiffs allege not only statements by Machete but by individuals within Machete. (*See, e.g.*, FAC ¶¶ 55-64 (identifying specific statements made by Kimberly Donnan, a Machete employee).) Machete already knows this, as evidenced by its citation of earlier paragraphs of the FAC when referring to Plaintiffs' fraudulent inducement allegations. (*See* Dkt. 45, p. 8 (citing FAC ¶¶ 60-61, 63, 215-24 when referring to Plaintiffs' fraud in the inducement allegations).) Machete cannot now claim that it does not know what statements are at issue or who made them. Plaintiffs have satisfied the "who" element of the Rule 9(b) standard.

### 3. *Plaintiffs alleged specific misrepresentations of fact.*

As with the "who," Machete selectively ignores earlier paragraphs of the FAC to argue that Plaintiffs failed to properly specify any particular misrepresentations of fact made by Machete and other Defendants.[9] (*See* Dkt. 45, pp. 15-16.) Plaintiffs' FAC is filled with specific statements. For example, Plaintiffs allege that on May 5, 2016, Kimberly Donnan emailed Howard stating that "The offer process is a true negotiation. What you see on tv is the actual offer and counter . . . ." (FAC ¶ 61.) In another example, Plaintiffs also allege that Lemonis said, "I just want to make you a success." (FAC ¶ 62.) Such allegations go far beyond the specificity required by Rule 9(b).

Moreover, these statements are actionable fraud. Indeed, "[w]hile [m]ere promissory statements as to what will be done in the future are not actionable, . . . it is settled that, *if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact* upon which an action for recision [sic] [based on fraudulent inducement] may be predicated." *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (emphasis in original) (citing *Sabo v. Delman,* 3 N.Y.2d 155, 160 (1957) (stating

---

[9]    If Machete is arguing that Rule 9(b) requires that all alleged misrepresentations and the details surrounding them be inserted directly into each fraud-based cause of action in the complaint without using references, it has not cited any authority to that effect. To do so would be repetitious and make the complaint extremely long given the specificity requirements of Rule 9(b).

that plaintiff's allegation that defendant, at the time it made a future promise, "knew it did not intend" to fulfill it, makes the alleged representation an allegation of present fact which gives rise to a claim of fraudulent inducement)); *New York Islanders Hockey Club, LLP v. Comerica Bank--Texas*, 71 F. Supp. 2d 108, 118 (E.D.N.Y. 1999) ("[A] relatively concrete representation as to a defendant's future performance, if made at a time when the speaker knows that the represented performance cannot be achieved, may ground a claim of fraud.").

The statements made by Machete and ML Defendants were not merely puffery or forward-looking statements. Instead, they were specific statements about what ML Defendants would do and how they would help Plaintiffs' business. Similar statements have been held to be actionable fraud. *Stamelman v. Fleishman-Hillard, Inc.*, 2003 WL 21782645, at *5 (S.D.N.Y. July 31, 2003) (finding that similar statements about helping a business grow, connecting plaintiff with clients, providing adequate staffing supported claim for fraudulent inducement.).

### 4. *Plaintiffs allege intent sufficiently to meet the applicable legal standard.*

Machete appears to suggest that the heightened pleading requirement of Rule 9(b) also applies to intent. (*See* Dkt. 45, p. 16.) It does not. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Minnie Rose LLC*, 169 F. Supp. 3d at 511 ("Rule 9(b)'s heightened particularity requirement does not apply to allegations regarding fraudulent intent, also known as scienter, which may be alleged generally."). Even "conclusory assertions of intent are sufficient if supported by facts giving rise to a strong inference of fraudulent intent." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017). "A strong inference of fraudulent intent may be established ***either*** (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, ***or*** (b) by alleging facts that constitute strong circumstantial evidence of *conscious misbehavior **or** recklessness*." *Pilkington N. Am., Inc.*, 460 F. Supp. 3d at 494. However, "great specificity as to scienter is not

required" and Plaintiffs need only plead circumstances providing "a minimal factual basis for conclusory allegations of scienter." *Greene*, 262 F. Supp. 3d at 73. The Second Circuit counsels leniency in allowing scienter issues to survive motions to dismiss on "fairly tenuous inferences" because scienter is "appropriate for resolution by the trier of fact." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009).

Plaintiffs have alleged facts showing that, at the very least, Machete acted with conscious misbehavior or recklessness. Plaintiffs need only "identif[y] the circumstances indicating conscious behavior by the [D]efendants." *Siben v. Am. Airlines, Inc.*, 913 F. Supp. 271, 278 (S.D.N.Y. 1996) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989)). Alleging facts sufficient to infer willful blindness also meets the standard. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness."). Indeed, "[s]cienter sufficient to make out a claim for common law fraud under New York law occurs when a speaker makes an affirmative representation with a reckless indifference to the risk of error." *Greenway II, LLC v. Wildenstein & Co. Inc.*, 2019 WL 11278321, at *6 (S.D.N.Y. Oct. 8, 2019). In its FAC, Plaintiffs allege that Machete knew that Lemonis had engaged in a pattern of fraudulent schemes with businesses appearing on the show in the past and that Machete knew its misrepresentations were false. (*See, e.g.,* FAC ¶ 220.) Plaintiffs also allege that Machete claimed that the on-screen negotiations portrayed in "The Profit" were real (FAC ¶ 61), but a Machete producer came and took the investment check away after the fake on-screen negotiation with Plaintiffs took place (FAC ¶ 70). Plaintiffs further allege that the fraud conducted here was a continuation of a pattern and lists specific earlier instances of similar frauds. (FAC ¶ 45.) Plaintiffs also allege that Machete put Plaintiffs and Robyn in contact with someone who had been on the show in 2014—two years

before Plaintiffs. (FAC ¶ 57.)

Based on the above, Machete had already produced many episodes by the time they spoke with Plaintiffs. Machete must have known that the on-screen negotiations were fake and that the any checks signed on camera would never be deposited. There are also enough facts to infer that Machete had witnessed earlier participants harmed during production of the show. When viewing the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor, both of which are required under the law, *Greene*, 262 F. Supp. 3d at 74, Plaintiffs allege more than enough facts to show strong circumstantial evidence of conscious misbehavior or recklessness. *See Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 473 (2013) (finding plaintiffs adequately alleged scienter by stating that defendants knew their representations were false when made and defendants were aware of lacking supporting scientific evidence for their claims); *Siben*, 913 F. Supp. at 278 (finding allegations that an airline stated a suitcase had been found coupled with knowledge that it had not been found to sufficiently state a fraud claim); *see also Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S. 2d 5, 8 (2013) (finding that the plaintiff adequately alleged fraud where the defendant told one of plaintiff's investors about business operations in a local office that did not actually exist, "permit[ting] a reasonable inference that he knew the statements . . . were false.").

### 5. *Plaintiffs sufficiently alleges that damages were caused by Machete's fraud.*

Machete's argument that it was not a cause of Plaintiffs' fraud claims falls flat. Machete's arguments regarding causation do not address the Rule 9(b) standard, but rather the causation requirement for New York common law fraud claims. (*See* Dkt. 45, pp. 18-19). In other words, Machete does not address particularity in the pleading, but argues that causation fails as a matter of New York law despite being the claims being well pled. (*See id.*)

Common law fraud claims in New York require that Plaintiffs "establish that the alleged

misrepresentations or other misconduct were the direct and proximate cause of the losses claimed." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 54 N.Y.S.3d 609 (N.Y. Sup. 2016) (citing *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (2002)). However, "[t]here may be more than one proximate cause of [] Plaintiff[s'] injuries." *Designer Limousine, Inc. v. Auth. Transportation, Inc.*, 110 N.Y.S.3d 133, 135 (2019). An "***independent*** intervening act may constitute a superseding cause, and be sufficient to relieve defendants of liability, if it is of such an extraordinary nature or so attenuated from [Defendants'] conduct that responsibility for the injury should not reasonably be attributed to them." *Id.* Nevertheless, "the question of proximate cause is generally to be decided by the finder of fact." *Id.*

Machete does not dispute that direct causation (or "but for" causation) is sufficiently alleged in Plaintiffs FAC. Instead, Machete focuses entirely on proximate causation, arguing that there are intervening acts and that Plaintiffs' damages are too attenuated from Machete's alleged misrepresentations. However, in doing so, Machete attempts to make the claims more complicated and convoluted than they really are. As to Machete, the causality chain is relatively simple: Machete misrepresented what Lemonis would do, suggesting he would help their business and make them money (*e.g.,* FAC ¶ 237); Machete knew this was false because businesses that had previously appeared on the show had been defrauded (*e.g.,* FAC ¶ 238); Plaintiffs relied on Machete's statements (*e.g.,* FAC ¶ 241); and Plaintiffs were harmed by the many actions outlined by Machete in their argument (Dkt. 45, pp. 18-19). In other words, with respect to fraud claims against Machete, Lemonis' actions during and after production of the show, (*see id.*), are ***not the causation chain*** but rather *the damages*.

Even if Lemonis' actions as articulated by Machete could be considered intervening acts, they are not "independent" of Machete's actions. Throughout its FAC, Plaintiff has alleged that

Machete and Lemonis worked together, and their actions were interrelated. Moreover, subsequent acts do not interrupt causality for fraud when they could have been reasonably anticipated by a defendant. *See New York Islanders*, 71 F. Supp. 2d 108 at 117 (denying motion to dismiss because proximate cause was sufficiently pled when plaintiff alleged that defendant could have anticipated a third party's conduct). Here, Plaintiffs allege that Machete knew of Lemonis' intentions and knew of Lemonis' pattern of defrauding businesses (FAC ¶ 220); therefore, Plaintiffs have pled that Machete could have reasonably anticipated Lemonis' actions, and Machete cannot escape liability for the harm it caused.

### B. Plaintiffs' claim for civil RICO is sufficiently pled for all defendants.

Plaintiffs have properly alleged civil RICO against all Defendants, including Machete. Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate . . . the provisions of subsection . . . (c)." 18 U.S.C. § 1962(d). "When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F.Supp.2d 225, 236 (E.D.N.Y.2010) (citing 18 U.S.C. § 1964(c)). Specifically, RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "From this language, courts have extracted the conditions a plaintiff must meet to satisfy RICO's standing requirements: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir.1994).

Although civil RICO presents many hurdles for a plaintiff to overcome, the Supreme Court has also "made clear that it would not interpret civil RICO narrowly." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 139 n.6 (2d Cir.2001) *citing Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985).

Machete cites *Boritzer v. Calloway* to suggest that Plaintiffs have not met the Rule 9(b) standard in its RICO claim,[10] but the court in *Boritzer* noted that the plaintiffs had only pleaded generalized conclusory allegations with regard to the underlying fraudulent schemes of the predicate acts. 2013 WL 311013, at *10 (S.D.N.Y. Jan. 24, 2013). The plaintiffs in *Boritzer* merely stated that there was "a scheme" on information and belief; they never alleged what the scheme was. *Id.* Here, Plaintiffs go into great detail alleging the overall scheme and its purpose. (FAC ¶ 281.) While Machete claims that Plaintiffs have not alleged how Machete benefited, that is not the case. (*See, e.g.,* FAC ¶ 283, 292 (noting that Machete is given the opportunity to "invest" in the target small businesses and to gain financially)). Machete is essentially arguing a question of fact, which is premature at this stage where Plaintiffs' allegations must be accepted as true.[11]

## 1. *Plaintiffs meet and exceed the legal requirements for establishing RICO enterprise.*
Plaintiffs have properly pled an association-in-fact enterprise among the Defendants. "An association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 298 (E.D.N.Y. 2017). To be sure, RICO defines enterprise broadly. *See generally Boyle v. United*

---

[10]    Machete seems to argue that the requirements of Rule 9(b) are stricter than they really are. Under Machete's pleading requirements, no Plaintiff would ever be able to state a RICO claim. But "while Rule 9(b) may be construed strictly in the context of civil RICO actions, it should not be applied in a manner which would, in effect, obstruct all plaintiffs, including those with valid claims, from initiating civil RICO actions. RICO clearly provides for civil remedies to benefit victims of racketeering, and in the absence of congressional action, these provisions should not be ignored." *In re Sumimoto Copper Litig.*, 995 F.Supp. 451, 456 (S.D.N.Y.1998).

[11]    Even though Plaintiffs do allege how Machete benefits, Machete does not cite any authority saying that they must benefit from the enterprise in any particular way. Indeed, Machete acknowledges that the complaint in *Boritzer* detailed how defendants benefited, but the court there still granted the motion to dismiss.

*States*, 556 U.S. 938 (2009) (clarifying enterprise requirements established in *Turkette*).

Contrary to Machete's arguments, there is a common purpose among the Defendants.[12] Machete and ML Defendants have the common purpose of finding business for ML Defendants to invest in and convincing those businesses to allow the Lemonis Defendants to invest in them. (FAC ¶ 281.) Again, Machete would not have a television show if it could not convince participants to be on it or if participants did not allow the ML Defendants to invest in their businesses. The ML Defendants then used the businesses they invested into and defrauded to increase their own assets, boost Lemonis' public persona, and make the show more successful—benefiting all Defendants. (*See id.*) This is a common purpose between all of the Defendants.

### 2. *Plaintiffs allege detailed predicate acts.*

Machete makes a threadbare argument that the FAC does not allege any predicate acts. However, the FAC clearly alleges that Machete has engaged in several predicate acts of mail and wire fraud, from at least March 2016 to present, of using the wires, mails, and television to make fraudulent and misleading statements and making fraudulent statements to Plaintiffs over Skype and email in 2016. (FAC ¶¶ 54-63, 282-295.) The FAC continues to allege predicate acts of mail and wire fraud by other participants in the Lemonis Enterprise. (FAC ¶¶ 282-295.) In order "to prove a violation of 18 U.S.C. § 1341, one need only show that a defendant was one of the participants in a scheme to defraud, and that the mails were used in furtherance of that scheme." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 479 (S.D.N.Y. 2015). Thus, Plaintiffs' FAC has properly alleged the predicate acts done by the Lemonis Enterprise.

### 3. *Proximate Cause*

As discussed above, Plaintiffs' FAC alleges that Machete has proximately caused

---

[12] In passing, Machete intimates that Plaintiffs do not plead Machete's role in the enterprise, however, the FAC very much details Machete's role in the enterprise. (FAC ¶ 279.)

Plaintiffs' injuries. A RICO claim must allege that a predicate offense was a proximate cause of Plaintiffs' injury. *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992). In *Holmes*, the Supreme Court applied a common law test to determine proximate cause. *Id.* However, Machete misstates the holding. In *Holmes*, a fraudulent scheme injured a securities firm and its clients who purchased artificially inflated securities. But the plaintiff in *Holmes* was not suing on behalf of the customers who had paid too much for the securities, but on behalf of customers who had been injured when the firm failed. The Supreme Court decided the case on standing, finding that only those who were directly injured (those who bought the artificially inflated securities) should sue. *Id.* at 271. Thus, when the Supreme Court in *Holmes* states that there must be a "direct relation" between the injury and the injurious conduct, they are referring to the *victim,* not one of the alleged perpetrators. *See id.* Here, Plaintiffs allege that Machete was the direct victim of Machete's fraud; Plaintiffs are not alleging that Machete defrauded someone else who then in turn harmed Plaintiff. Therefore, Plaintiffs sufficiently plead proximate causation.

### 4. *First amendment*

Machete has failed to provide any case law actually supporting its argument that the First Amendment exculpates predicate acts performed as part of a television show from RICO liability. Instead, Machete cites a concurring opinion for the general idea that courts should be aware of RICO's potential impact on the First Amendment. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264-65 (1994). Notably, the case relied on by Machete for dismissal based on predicate acts based on the First Amendment deals with the First Amendment's ecclesiastical abstention doctrine, not the freedom of speech. *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 404 (S.D.N.Y. 2019).

Rather, the Second Circuit has already determined that fraud done in violation of the mail and wire fraud statutes "enjoys no constitutional protection." *United States v. Rybicki*, 354 F.3d

124, 150–51 (2d Cir. 2003); *see Plumley v. Massachusetts,* 155 U.S. 461, 479 (1894) ("The constitution of the United States does not secure to any one the privilege of defrauding the public."); *see also Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.,* 538 U.S. 600 (2003) (noting that fraud is not conduct protected by the First Amendment). As such, Machete's predicate acts of mail and wire fraud are not protected by the First Amendment.

### 5. *The RICO statute of limitations does not apply.*

Machete half-heartedly claims that the statute of limitations bars Plaintiffs' claims against it because it has not engaged in any acts since 2016. However, the affirmative defense of statute of limitations "normally cannot be decided on a motion to dismiss." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). Indeed, it is only where the defense appears on the face of the complaint that such a determination is appropriate. *Deswal v. U.S. Nat. Ass'n*, 603 F. App'x 22, 23–24 (2d Cir. 2015).

The limitations period for Plaintiffs' RICO cause of action begins to run when Plaintiffs "discover[ed] or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998). Here, it is not apparent, on the face of the FAC, that Plaintiffs discovered, or should have discovered, their claim more than a year before the filing this suit. As such, dismissal pursuant to the statute of limitations would be improper. *See Essex Capital Corp. v. Garipalli*, 2018 WL 6618388, at *3 (S.D.N.Y. Dec. 18, 2018) (denying to apply the statute of limitations on a motion to dismiss stating, "[a]s the FAC lacks any allegations from which this Court can determine the date of the fraud's discovery, there is insufficient information in the FAC to facially show noncompliance with the limitations period.").

### C. Plaintiffs plead facts showing that Machete acted as an agent of Lemonis.

To establish an agency relationship, a complaint must plead only "facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the

agent. In addition, the principal must maintain control over key aspects of the undertaking." *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 225 (S.D.N.Y. 2013); *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) ("To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority."). "[C]ourts have recognized that to survive a motion to dismiss under 12(b)(6) on this issue, a plaintiff need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and agent." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010).

Machete's argument that the FAC only contains cursory allegations of agency ignores the plethora of allegations regarding Machete's agency relationship with the ML Defendants. Indeed, the FAC has numerous facts, taken together, which allow a reasonable inference that the ML Defendants gave Machete actual authority to act on their behalf in recruiting people and businesses, including Plaintiffs, to appear on "The Profit" and convince them to allow the ML Defendants to invest in their business. (FAC ¶¶ 48-50.) The FAC alleges that Machete was the production company for the show "The Profit." (FAC ¶ 18.) As part of that role, Machete searched for, interviewed, and screened potential people and small businesses for the show. (*Id.* ¶¶ 48-50.) The FAC alleges that Machete was authorized to make representations to potential participants, and the general public, about the ML Defendants in order to entice people to apply for the show. (*Id.* ¶¶ 47-50.) The FAC alleges that Machete was authorized to vet applicants for the show. (*See id.* ¶¶ 47-51.) These are more than just cursory allegations of agency. As such, the FAC has successfully pleaded an agency relationship between Machete and ML Defendants.

## **LEAVE TO AMEND**

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a liberal standard and "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Thus, leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

Here, there would be no undue delay or prejudice if Plaintiffs are allowed to amend the FAC. Moreover, Machete does not ask the Court to dismiss with prejudice or deny leave to amend. Thus, to the extent the Court finds merit in Machete's motion, Plaintiffs should be granted leave to amend.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Machete's motion in its entirety, and to the extent the Court grants any portion of Machete's motion, Plaintiffs request leave to amend.

Dated: January 13, 2021                    Gerard Fox Law P.C.

_____
Gerard P. Fox *pro hac vice forthcoming*)
Maja Lukic (SBN 4888038)
1345 Sixth Avenue, 33rd Floor
New York, New York 10105
Telephone: (646) 690-4980
Facsimile: (646) 368-9328
gfox@gerardfoxlaw.com
mlukic@gerardfoxlaw.com