**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HOWARD NOURIELI, an individual, and BOWERY KITCHEN SUPPLIES, INC., a New York corporation, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 20-cv-8233-JPO |
| | : | |
| v. | : | |
| | : | |
| MARCUS LEMONIS, an individual, MARCUS LEMONIS, LLC, a Delaware limited liability company, CAMPING WORLD HOLDINGS, INC., a Delaware corporation, and MACHETE CORPORATION d/b/a/ MACHETE PRODUCTIONS, a California corporation; and DOES 1 through 10, inclusive, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO ML DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ...................................................................................................................... 5

   I.   EXTRINSIC EVIDENCE MAY NOT BE CONSIDERED ON A MOTION TO
       DISMISS ................................................................................................................. 5

   II.  PLAINTIFFS' FAC INFORMS EACH DEFENDANT OF THEIR WRONGDOINGS
       AND PLAINTIFFS PROPERLY ALLEGE ALTER EGO .............................................. 6

   III. PLAINTIFFS' TRADEMARK AND UNFAIR COMPETITION CLAIMS ARE
       SUFFICIENTLY PLED .............................................................................................. 9

     A. Plaintiffs never authorized use of their trademark and the Term Sheet is not a valid
       contract. ............................................................................................................... 9

     B. ML Defendants induced infringement and unfair competition ............................ 11

   IV. PLAINTIFFS SUFFICIENTLY STATED ALL FRAUD CLAIMS UNDER THE
       APPROPRIATE LEGAL STANDARD ...................................................................... 12

     A. The economic loss doctrine does not apply to this situation. ............................... 12

     B. Plaintiffs sufficiently plead fraud under the heightened pleading standard of Rule 9 (b). 13

     C. ML Defendants' actions give rise to a claim for deceptive practices in violation of GBL
       349 ...................................................................................................................... 15

     D. Plaintiffs' properly allege tortious interference with business relations .............. 16

     E. Plaintiffs may plead unjust enrichment as an alternative claim ........................... 17

   V.  PLAINTIFFS' PLEAD THEIR CIVIL RICO CLAIM WITH REQUISITE
       PARTICULARITY .................................................................................................. 17

     A. Plaintiffs exceed legal requirements for establishing enterprise ......................... 18

     B. Plaintiffs properly plead predicate criminal acts to justify RICO. ....................... 20

   VI. PLAINTIFFS' CLAIM FOR DECLARATORY JUDGMENT PLEADS A LIVE
       CONTROVERSY TO BE RESOLVED BY THE COURT ........................................... 21

LEAVE TO AMEND ........................................................................................................ 22

CONCLUSION ................................................................................................................. 23

**Cases**

*A.V.E.L.A., Inc. v. Estate of Monroe,*
  34 F. Supp. 3d 311 (S.D.N.Y. 2014) ............................................................... 7, 8

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n,*
  328 F. Supp. 3d 141 (S.D.N.Y. 2018) ................................................................ 12

*Arar v. Ashcroft,*
  585 F.3d 559 (2d Cir. 2009) ........................................................................ 4, 6, 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 4

*Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,*
  268 F.3d 103 (2d Cir.2001) ................................................................................. 18

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo,*
  346 F. Supp. 3d 432 (S.D.N.Y. 2018) ................................................................ 19

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 4

*Bertuglia v. City of New York,*
  839 F. Supp. 2d 703 (S.D.N.Y. 2012) ................................................................. 5

*Brown Media Corp. v. K & L Gates, LLP,*
  586 B.R. 508 (E.D.N.Y. 2018) ........................................................................... 16

*Catskill Dev., LLC v. Park Place Entm't Corp.,*
  547 F.3d 115 (2d Cir. 2008) ............................................................................... 16

*Cedric Kushner Promotions, Ltd. v. King,*
  533 U.S. 158 (2001) ..................................................................................... 18, 19

*Chanayil v. Gulati,*
  169 F.3d 168 (2d Cir.1999) ................................................................................ 20

*Computech Int'l, Inc. v. Compaq Computer Corp.,*
  2004 WL 1126320 (S.D.N.Y. May 21, 2004) ..................................................... 12

*Cruz v. FXDirectDealer, LLC,*
  720 F.3d 115 (2d Cir. 2013) ............................................................................... 20

*Daly v. Metropolitan Life Ins. Co.*,

    4 Misc.3d 887, 782 N.Y.S.2d 530, (Sup.Ct.N.Y.Co.1992) ..................................... 15

*DiVittorio v. Equidyne Extractive Indus., Inc.*,

    822 F.2d 1242 (2d Cir. 1987) ................................................................................... 13

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,

    726 F.Supp.2d 225 (E.D.N.Y.2010) ........................................................................ 18

*DO Denim, LLC v. Fried Denim, Inc.*,

    634 F.Supp.2d 403 (S.D.N.Y.2009) ........................................................................ 16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,

    411 F.3d 384 (2d Cir. 2005) ................................................................................... 22

*EED Holdings v. Palmer Johnson Acquisition Corp.*,

    387 F.Supp.2d 265 (S.D.N.Y.2004) ........................................................................ 12

*Elsevier, Inc. v. Grossman*,

    199 F. Supp. 3d 768 (S.D.N.Y. 2016) ..................................................................... 18

*Estes v. City of New York*,

    2006 WL 2299350 (E.D.N.Y. Apr. 11, 2006) .......................................................... 14

*Ferrara v. Smithtown Trucking Co.*,

    29 F.Supp.3d 274 (E.D.N.Y. 2014) ........................................................................... 8

*First Nationwide Bank v. Gelt Funding Corp.*,

    27 F.3d 763 (2d Cir. 1994) ..................................................................................... 18

*Hart v. BHH, LLC*,

    2017 WL 2912519 (S.D.N.Y. July 7, 2017) ............................................................ 12

*Hayden v. Paterson*,

    594 F.3d 150 (2d Cir. 2010) ..................................................................................... 5

*Hesse v. Godiva Chocolatier, Inc.*,

    463 F. Supp. 3d 453 (S.D.N.Y. 2020) ....................................................................... 5

*In re Refco Inc. Sec. Litig.*,

    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ..................................................................... 15

*In re Sumitomo Copper Litig.*,

    995 F.Supp. 451 (S.D.N.Y.1998) ............................................................................ 20

*In re Thelen LLP*,
736 F.3d 213 (2d Cir.) ...................................................................................... 5

*Jackson v. Onondaga Cty.*,
549 F. Supp. 2d 204 (N.D.N.Y. 2008) ............................................................. 4

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
436 N.Y.S.2d 247 (N.Y. 1981) ....................................................................... 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ........................................................................... 23

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020) ............................................................................... 4

*Maldonado v. Town of Greenburgh*,
460 F. Supp. 3d 382 (S.D.N.Y. 2020) ............................................................ 17

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
137 F. Supp. 3d 430 (S.D.N.Y. 2015) ............................................................ 20

*Milanese v. Rust-Oleum Corp.*,
244 F.3d 104 (2d Cir. 2001) ........................................................................... 23

*Minnie Rose LLC v. Yu*,
169 F. Supp. 3d 504 (S.D.N.Y. 2016) ............................................................ 13

*Moses v. Martin*,
360 F. Supp. 2d 533 (S.D.N.Y. 2004) ............................................................ 19

*Natixis Fin. Prod. LLC v. Bank of Am., N.A.*,
323 F.R.D. 504 (S.D.N.Y. 2018) ...................................................................... 9

*Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*,
2002 WL 31050846, (S.D.N.Y. Sept. 12, 2002) .............................................. 8

*Newspaper & Mail Deliverers' Union of New York & Vicinity v. United Magazine Co.*,
829 F. Supp. 561 (E.D.N.Y. 1993) ................................................................... 8

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
94 F.3d 747 (2d Cir. 1996) ............................................................................. 22

*Niesig v. Team I*,
76 N.Y.2d 363 (1990) ..................................................................................... 14

*Parker v. Citizen's Bank, N.A.*,
　2019 WL 5569680 (S.D.N.Y. Oct. 29, 2019) ........................................................ 21

*Pereira v. United States,*
　347 U.S. 1 (1954) ............................................................................................... 20

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
　460 F. Supp. 3d 481 (S.D.N.Y. 2020) ............................................................. 4, 13

*Ramiro Aviles v. S & P Glob., Inc.*,
　380 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................................................ 14

*Rana v. Islam*,
　305 F.R.D. 53 (S.D.N.Y.2015) ........................................................................... 13

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
　2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) .................................................... 15

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
　30 F.3d 339 (2d Cir. 1994) ................................................................................. 19

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
　929 F. Supp. 117 (S.D.N.Y. 1996) ....................................................................... 7

*Roth v. Jennings*,
　489 F.3d 499 (2d Cir. 2007) ................................................................................. 5

*Schmuck v. United States,*
　489 U.S. 705 (1989) ........................................................................................... 20

*Sedima, S.P.R.L. v. Imrex Co.,*
　473 U.S. 479 (1985) ........................................................................................... 18

*Singer v. Xipto Inc.*,
　852 F. Supp. 2d 416 (S.D.N.Y. 2012) ................................................................ 10

*Starke v. SquareTrade, Inc.*,
　913 F.3d 279 (2d Cir. 2019) ............................................................................... 10

*United States v. Chestman*,
　947 F.2d 551 (2d Cir.1991) ................................................................................ 15

*United States v. Doherty*,
　786 F.2d 491 (2d Cir. 1986) ............................................................................... 22

*United States v. Funds Held in the Name or for the Benefit of Wetterer*,

    210 F.3d 96 (2d Cir.2000) ................................................................. 8

*Vacold LLC v. Cerami*,

    545 F.3d 114 (2d Cir. 2008) ............................................................. 10

*Wajilam Exports (Singapore) Pte Ltd. v. ATL Shipping Ltd.*,

    475 F.Supp.2d 275 (S.D.N.Y.2006) .................................................. 7

*Weisblum v. Prophase Labs, Inc.*,

    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................ 12

*Williams v. Citigroup Inc.*,

    659 F.3d 208 (2d Cir. 2011) ............................................................. 23

*Zinaman v. USTS New York, Inc.*,

    798 F. Supp. 128 (S.D.N.Y. 1992) .................................................... 7

## Statutes

18 U.S.C. § 1341 ............................................................................. 24, 25

18 U.S.C. § 1962 ................................................................................... 21

18 U.S.C. § 1964 ................................................................................... 21

28 U.S.C. § 2201 ................................................................................... 26

N.Y. GBL § 349 ................................................................................... 18

## Rules

Fed. R. Civ. P. 8 ........................................................................ 3, 4, 20, 23

Fed. R. Civ. P. 9 ................................................................................... 16

Fed. R. Civ. P. 12 ........................................................................... 4, 6, 7

Fed. R. Civ. P. 15 ........................................................................... 27, 28

Fed. R. Civ. P. 56 ................................................................................... 6

Plaintiffs Howard Nourieli ("Howard") and Bowery Kitchen Supplies Inc. ("Bowery Kitchen") (collectively, "Plaintiffs"), hereby submit their memorandum of law in opposition to Defendants Marcus Lemonis' ("Lemonis") and Marcus Lemonis, LLC's (ML LLC) (together, the "ML Defendants") Motion to Dismiss. Other defendants include Machete Corporation d/b/a/ Machete Productions' ("Machete"), CWI, Inc. ("Camping World"), and DOES 1 through 10 ("DOE Defendants") (all collectively with ML Defendants, "Defendants"). As set forth below, Plaintiffs have properly alleged the claims in their First Amended Complaint ("FAC") and Machete's motion should be denied.[1]

## STATEMENT OF FACTS

The facts of this case are fully established in Plaintiffs' FAC, but Plaintiffs provide a brief summary here. Bowery Kitchen was originally founded by Howard's family in 1975 on Bowery Street in New York City. (FAC ¶ 30.) It focused on selling heavy kitchen equipment and appliances. (*Id.*) In 1990, Howard decided to open his own Bowery Kitchen and expanded its customer base and selection, offering kitchen supplies to restaurants, cooking enthusiasts, professional chefs, and at-home chefs. (FAC ¶ 31.) In 1996, Howard together with his high school sweetheart and 50 percent business partner Robyn Coval ("Robyn") moved the Bowery Kitchen store to Chelsea Market in Lower Manhattan. (FAC ¶ 32.) Like many small-business owners, Howard and Robyn poured their hearts and souls into Bowery Kitchen. Their hard work was rewarded, and Bowery Kitchen received accolades from celebrities, television shows, and the New York Times. (FAC ¶ 34.) By 2016 Bowery Kitchen was already a successful business, generating

---

[1] All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted. All "Ex." References are to the documents attached to Plaintiffs' First Amended Complaint.

over $3 million in annual revenue. (FAC ¶ 35.) Although Bowery Kitchen was successful, Howard wished to expand to other locations and other revenue streams. (*See* FAC ¶ 52.) One step Howard took in preparation was to have a logo created and trademarked. (FAC ¶¶ 36-38.) However, Howard and Robyn needed someone with expertise and experience to help the company expand. This is exactly the type of expert who Defendant Marcus Lemonis ("Lemonis") portrays on the television show, "The Profit," produced by Defendant Machete. (FAC ¶¶ 39-42.)

In "The Profit," Lemonis appears to invest in small, family-run businesses and use his expertise to help them expand and become more successful. (*Id.*) However, this is merely a facade, as Lemonis, in actuality, preys on businesses and seizes their tangible and intangible property for his own gain. (FAC ¶ 43-46.) Machete develops and produces "The Profit." (FAC ¶ 18.) Machete, acting on ML Defendants' behalf, seeks out targets for the scam and vets them before they appear on the show. (FAC ¶ 48.) Lemonis and various corporate entities associated with him take advantage of the relative lack of sophistication of small, family-run businesses; together, ML Defendants structure complicated agreements involving secured debt and one-sided contracts combined with Lemonis' wealth to exploit the hard work of the business owners for his own gain. (*See* FAC ¶¶ 43-46). Owners are left with little else besides a feeling of shame for allowing themselves to be exploited, all while the events are filmed and selectively edited to portray whatever story ML Defendants and Machete want to tell, broadcasted on national television. (*See* FAC ¶¶ 66, 83, 118-19.)

On October 18, 2016, Bowery Kitchen was featured on an episode of "The Profit." (FAC ¶ 66.) In order to convince Plaintiffs to appear on the show, Machete and other Defendants made several misrepresentations to the Plaintiffs. (FAC ¶¶ 47-64.) Defendant Machete conducted phone calls and Skype calls with Plaintiffs telling them that Lemonis truly helps the businesses that

appeared on the show and that he could and would help their business go to the next level. (FAC ¶ 48, 54.) Howard and Robyn were hesitant at first, but later calls from Machete emphasized how much Lemonis liked Howard and Robyn and worked to alleviate any concerns. (FAC ¶¶ 56-57.) Lemonis himself also called to convince Howard and Robyn to appear on the show. (FAC ¶ 62.) Finally, based upon ML Defendants' and Machete's misrepresentations and enamored with the thought of being on national television and growing their company, Plaintiffs agreed to appear on the show. (*See* FAC ¶¶ 47-64.)

In the episode, Lemonis offered to invest in the business by acquiring a 33.3 percent interest in Bowery Kitchen for $350,000 (FAC ¶ 68); however, Lemonis quickly abandoned the aired "deal" (FAC ¶ 71). This did not stop Lemonis from taking over the business, liquidating the company's inventory at fire sale prices, and leaving the store closed for over a month while performing renovations. (FAC ¶ 74-82.) Ultimately, Lemonis forced Plaintiffs, and even Bowery Kitchen employees, into unrecoverable debt. (*See* FAC ¶¶ 91.) After ML Defendants and Machete left Plaintiffs in shambles, other companies owned, and/or controlled, by Lemonis began using Bowery Kitchen's trademarks illegally. (FAC ¶¶ 19, 105.) Not only did these companies, including Camping World, profit from Bowery Kitchen's trademark and reputation, they ultimately caused irreparable harm to Plaintiffs' reputation. (*See* FAC ¶¶ 105-107.) Defendants knowingly and intentionally made false representations that they would be help Plaintiffs—that it would be a partnership. (FAC ¶ 71.) In reality, Defendants profited while setting Plaintiffs up to fail. (*See* FAC ¶¶ 118-119.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such

a statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008). Rule 12 (b)(6) allows a defendant to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P. 12 (b)(6).

Allegations of fraud within a complaint "must satisfy the heightened pleading requirements of Rule 9 (b) by stating the circumstances constituting fraud with particularity." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 491 (S.D.N.Y. 2020). However, "Rule 9 (b)'s heightened particularity requirement does not apply to allegations regarding fraudulent intent, also known as scienter, which may be alleged generally." *Id.*

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6) where the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[I]n deciding a Rule 12 (b)(6) motion to dismiss a complaint, [the Court] is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679). The court also must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Id.* (quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Id.* (quoting *Twombly*, 550 U.S. at 556). In other words, the Court's role at this stage is "not to weigh the

evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012). Under this standard, Defendants' motion must be denied.

**ARGUMENT**

## I. EXTRINSIC EVIDENCE MAY NOT BE CONSIDERED ON A MOTION TO DISMISS.

As an initial matter, ML Defendants cannot even begin their facts section without making dubious legal claims. (Dkt. 40, p. 1, n.1.) ML Defendants attempt to introduce a YouTube video purporting to be the episode of "The Profit" featuring Plaintiffs. ML Defendants also attempt to introduce screen captures and quotes from social media. (*See* Dkt. 40, pp. 1-3; Dkt. 41-2.) This attempt to introduce extrinsic evidence is improper and flies in the face of the legal standard requiring the Court to accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

When "adjudicating a motion to dismiss, a court may consider ***only*** the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any ***document*** upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir.). The Court may take judicial notice "of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings— all for the limited purpose of noting what the documents state, rather than to prove the truth of their contents." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020). If the Court takes judicial notice, it is "*again not for the truth of the matters asserted.*" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12 (d).

None of the cases cited by ML Defendants support considering anything but *written* documents. Furthermore, Plaintiffs do not reference Twitter or Bowery Kitchen's Facebook page in their FAC, much less rely on them. Plaintiffs have not verified the authenticity of ML Defendants' extrinsic evidence, and therefore Plaintiffs dispute the validity of this evidence for purposes of the 12(b)(6) motion. Nevertheless, ML Defendants cite their introduced evidence in their Facts section more than they cite to Plaintiffs' FAC. (*See* Dkt. 40, pp. 1-4.) ML Defendants' attempts to circumvent the standards set by Rule 12 (b)(6) must not be allowed; they are limited to arguing facts as established in Plaintiffs' FAC, which in turn must be viewed in the light most favorable to Plaintiffs. *See Arar*, 585 F.3d at 567. The Court may only consider ML Defendants' extrinsic evidence if it chooses to convert the motion into one for summary judgment. *See* Fed. R. Civ. P. 12 (d).

## II.    PLAINTIFFS' FAC INFORMS EACH DEFENDANT OF THEIR WRONGDOINGS AND PLAINTIFFS PROPERLY ALLEGE ALTER EGO.

ML Defendants argue that Plaintiffs' FAC relies on improper group pleading; however, that is plainly untrue. Throughout the FAC, Plaintiffs differentiate which defendants did what, and even ML Defendants acknowledge that different claims and different paragraphs refer to different groups of Defendants. (*See* Dkt. 40, p. 5.) The cases cited by ML Defendants do not apply here. *In Atuahene v. City of Hartford*, the Second Circuit in a summary order affirmed the dismissal of a complaint that never differentiated between the defendants in the entire complaint. *See* 10 F. App'x 33, 34 (2d Cir. 2001). The court in and *Nesbeth v. New York City Mgmt. LLC* dismissed a claim in which did all twenty-one defendants were alleged to have violated seven statutes cited in the complaint and were all named in each of the sixteen causes of action. 2019 WL 110953, at *3

(S.D.N.Y. Jan. 4, 2019). In its FAC, Plaintiffs identify which Defendants did what throughout, providing all Defendants fair notice of what the Plaintiffs' claims are and the grounds upon which they rest. Where certain Defendants are grouped together in the FAC, Plaintiffs provide a factual basis as to why.

As acknowledged by ML Defendants, Plaintiffs allege that the ML Defendants are alter egos of one another. (Dkt. 40, p. 5.) As alter egos, they are properly grouped as ML Defendants (or Lemonis Defendants). Contrary to ML Defendants' claim, the FAC sufficiently pleads alter ego. Courts in New York will disregard the corporate form "either when there is fraud or when the corporation has been used as an alter ego." *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 121 (S.D.N.Y. 1996). To establish alter ego, a plaintiff must allege, "(1) that the parent exercised such complete domination in respect to the transaction attacked that the subsidiary had at that time no separate will of its own, and (2) that this domination was used to commit fraud or wrong against the plaintiff." *Zinaman v. USTS New York, Inc.*, 798 F. Supp. 128, 132 (S.D.N.Y. 1992).

In determining alter ego, courts analyze a number of factors including: "(1) the absence of corporate formalities; (2) inadequate capitalization; (3) overlap in ownership, officers, directors, and employees; (4) common office space, address, and telephone numbers; (5) the amount of business discretion displayed by the allegedly dominated corporation; and (6) arm['']s length business dealings between the related corporations." *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 320 (S.D.N.Y. 2014). "In making an alter ego determination, a court is concerned with reality and not form, and with how the corporation operated." *Wajilam Exports (Singapore) Pte Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 282 (S.D.N.Y.2006) (internal quotation marks

omitted); *see United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir.2000) (noting that alter ego determination must be made based on totality of facts).

Here, Plaintiffs' FAC contain more than enough allegations to support alter ego against the Lemonis Defendants. Plaintiffs have alleged that Lemonis and ML LLC failed to observe corporate formalities, that Lemonis is the sole natural person involved in the ownership/management of each entity, that the entities share the same address, that the various corporate entities were merely a façade for Lemonis' operations, and that Lemonis used the corporate entities and their assets to further his personal interests. (FAC ¶¶ 22-25.) The FAC alleges unity in ownership between Lemonis and ML LLC such that Lemonis is the only natural person in charge of each defendant. (*Id.*) Indeed, ML LLC could act *only* through Lemonis. (*Id.*) The FAC alleges that Lemonis solely controls the operations of ML LLC. (*Id.*) These allegations sufficiently allege alter ego. *See A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 320 (S.D.N.Y. 2014) (finding alter ego allegations sufficient where one person was "the sole shareholder, officer, director, and employee" of the entity at issue.); *Ferrara v. Smithtown Trucking Co.*, 29 F.Supp.3d 274, 284-85 (E.D.N.Y. 2014) (finding "extensive allegations" of common management, supervision, and ownership, inadequate capitalization, and shared operations, equipment, and customers sufficient to support alter ego claims); *Newspaper & Mail Deliverers' Union of New York & Vicinity v. United Magazine Co.*, 829 F. Supp. 561, 566 (E.D.N.Y. 1993) (Complaint that alleged that an individual defendant dominated and controlled decision-making processes of defendant employer sufficiently alleged that such individual was an alter ego.); *Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*, 2002 WL 31050846, at *4 (S.D.N.Y. Sept. 12, 2002) (finding allegations of same address and telephone number, "complete domination" by same chairman, and financial inconsistencies sufficient to allow proposed amendment adding alter ego claims, and collecting cases.).

ML Defendants misunderstand the Rule 12 (b)(6) standard when they demand more specificity regarding the facts alleging alter ego. (Dkt. 40, p. 6.) Merely stating that Lemonis and ML LLC are alter egos of one another would have been conclusory; however, the FAC dedicates nearly two pages to the facts alleging alter ego, including the extent of Lemonis' control, disregard of corporate form, and commingling of funds. (FAC ¶ 22-25.) ML Defendants seem to consider every statement of fact to be "conclusory" under the *Iqbal* standard, always insisting that Plaintiffs' FAC always drill one level deeper to show more underlying facts. Plaintiffs need not, at the pleading stage, articulate every manner in which the corporate form was disregarded, and then articulate the facts underlying each of those, and in turn the facts underlying each of those. Plaintiffs' FAC is sufficient to put ML Defendants on notice of Plaintiffs' claims, and that is sufficient. *Natixis Fin. Prod. LLC v. Bank of Am.*, N.A., 323 F.R.D. 504, 510 (S.D.N.Y. 2018) ("The purpose of notice pleading is to provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

## III. PLAINTIFFS' TRADEMARK AND UNFAIR COMPETITION CLAIMS ARE SUFFICIENTLY PLED.

Plaintiffs sufficiently plead trademark and unfair competition claims. ML Defendants' argues that a binding agreement existed, but Plaintiffs never authorized use of their trademark. A binding agreement could not have been formed because nothing suggests that ML Defendants ever had the requisite intent to form such an agreement.

### A. Plaintiffs never authorized use of their trademark and the Term Sheet is not a valid contract.

ML Defendants argue that Plaintiffs and Lemonis entered into a binding agreement on-screen and with the term sheet included as FAC Exhibit B ("Term Sheet"). Yet "[i]t is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a

manifestation of mutual assent.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

"The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* (referencing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 436 N.Y.S.2d 247 (N.Y. 1981)). Far from being conclusory, Plaintiffs allege that the Term Sheet is invalid because neither Bowery Kitchen nor Lemonis signed it. (FAC ¶ 90.) Plaintiffs also go into great detail alleging facts that show ML Defendants did not consider the Term Sheet to be a binding agreement. (FAC ¶¶ 93-104.) Specifically, Plaintiffs allege that ML Defendants kept trying to get Plaintiffs to sign an agreement related to their IP rights. (*See id.*) These facts are enough to infer that ML Defendants did not believe there was a binding contract, and therefore, ML Defendants never held the mutual assent necessary to create a binding contract.

Even under ML Defendants' chosen test, Plaintiffs and Lemonis did not enter into a binding contract with their so-called "preliminary agreement." ML Defendants propose a four-factor test to determine whether a preliminary agreement is a binding contract:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 423 (S.D.N.Y. 2012). The "first factor is the most important in the context of a binding preliminary commitment." *Id.* As ML Defendants acknowledge, "[t]he ultimate issue, as always, is the *intent of the parties to be bound*, and if so, to what extent." *Id.* (quoting *Vacold LLC v. Cerami*, 545 F.3d 114, 123-24 (2d Cir. 2008).

At least two factors fail. First, not *all* of the terms of the alleged contract were agreed upon. This is clearly demonstrated by the fact that the terms of the on-air agreement do not match the Term Sheet. (*Compare* FAC ¶ 68, *with* Dkt. 23-2.) ML Defendants claim that the agreement was

reached on-air and memorialized in FAC Exhibit B (Dkt. 40, p. 9), but this cannot be the case when the terms differ between the two. Additionally, Plaintiffs allege facts demonstrating that ML Defendants continued to negotiate the terms for several months. (*See* FAC ¶¶ 93-104.)

Second, Lemonis did have an express reservation not to be bound in the absence of a specific writing. In the release agreement drafted on behalf of ML Defendants and provided to the companies that participate in the show, an entire paragraph is dedicated to describing how the on-air negotiation is simulated and stating that a Term Sheet is only binding if it specifically states as such. (See Dkt. 46-2, ¶ 1B(ii).) Otherwise, ML Defendants consider it merely a precursor to an actual binding contract. (*See id.* ¶¶ 1b(ii-iii).) In essence, Lemonis reserved the right not to be bound in the absence of a specific writing. Furthermore, Lemonis could not possibly have the intent to be bound to an agreement that he expressly claims is part of only a "simulated" negotiation. Thus, while Plaintiffs *did* believe that the on-screen negotiations were real (due to Defendants' fraudulent misrepresentations) (FAC ¶ 61), Lemonis *did not* believe the negotiations were real. Without Lemonis' intent to be bound, there was no meeting of the minds, no mutual assent, and no binding contract.

### B. ML Defendants induced infringement and unfair competition.

ML Defendants rely entirely on their consent argument when claiming that ML Defendants did not commit contributory infringement or unfair competition. (*See* Dkt., p. 12.) Essentially, ML Defendants claim that they lacked the requisite intent because they believed there was a binding agreement granting consent to utilize Plaintiffs' trademarks. (*See id.*) As previously established, ML Defendants had no such belief. They never believed the Term Sheet to be binding (*See* Dkt. 46-2, ¶ 1B(ii)), so they continued to negotiate terms for Plaintiffs' intellectual property, including their trademark (*See* FAC ¶¶ 93-104.) Because ML Defendants knew they did not have Plaintiffs'

consent, Plaintiffs' claims of contributory infringement and unfair competition are sufficient, and the Court should deny ML Defendants' motion to dismiss.

## IV. PLAINTIFFS SUFFICIENTLY STATED ALL FRAUD CLAIMS UNDER THE APPROPRIATE LEGAL STANDARD

### A. The economic loss doctrine does not apply to this situation.

Defendants' argument that Plaintiffs' tort claims fail under the economic loss doctrine fall flat. In general, the economic loss doctrine provides that "a plaintiff who has suffered economic loss, but not personal or property injury, may not recover in tort if the damages are the type remedial in contract." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015). As an initial matter, there is no breach of contract claim here, and there is no agreement by which Plaintiffs could attempt to recover, making this argument dead on arrival.

Even if there were such a contract or contract claim here, however, "the applicability of the economic loss rule outside the product-liability context from which it originated is doubtful." *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018). New York does not apply the economic loss doctrine to fraud claims. *Weisblum*, 88 F. Supp. 3d at 297– 98 ("the Court declines to dismiss Plaintiffs' fraud claims on the basis of the economic loss doctrine."); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F.Supp.2d 265, 278 (S.D.N.Y.2004) (noting that the Court was not aware of any cases where New York courts applied the economic loss doctrine to fraud claims); *Computech Int'l, Inc. v. Compaq Computer Corp.*, 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) ("In the absence of any articulation to the contrary by the New York courts, the economic loss doctrine will not be presumed to extend to fraud claims."); *Hart v. BHH, LLC*, 2017 WL 2912519, at *2 (S.D.N.Y. July 7, 2017) ("The economic loss rule does not bar tort claims for fraud or intentional misrepresentation if the allegedly tortious conduct is independent of the conduct constituting a breach.").

Even if the economic loss doctrine did apply, it would not bar Plaintiffs' fraud claims. Defendants attempt to paint the misrepresentations, inducements, and fraudulent statements that form the core of Plaintiffs' fraud claims as claims that Plaintiffs did not get the benefit of the bargain reached on the television episode. That is not the crux of Plaintiffs' fraud claims. The FAC alleges that Defendants made statements in order gain a position of trust with Plaintiffs, induce Plaintiffs into allowing Defendants to invest in their business, and using the control they gained over Plaintiffs' business to run it into the ground and enrich themselves with the pieces of the business. (*e.g.,* FAC ¶ 93, 105.)

**B. Plaintiffs sufficiently plead fraud under the heightened pleading standard of Rule 9 (b).**

Rule 9 (b) of the Federal Rules of Civil Procedure establishes a heightened pleading standard for allegations involving fraud, whereby Plaintiffs must state the circumstances constituting fraud with particularity. *Pilkington N. Am., Inc.*, 460 F. Supp. 3d at 491. Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). To be sure, "a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y.2015). Here, Plaintiffs' FAC contains allegations sufficient to give Machete fair and reasonable notice of Plaintiffs' claims against it and other Defendants.

ML Defendants' argument, that Plaintiffs' have failed to fulfill Rule 9 (b)'s particularity requirements, hinges almost entirely on their unconvincing alter ego arguments, addressed above.

Even without the ML Defendants' actions being imputed onto each other—which they should be—Plaintiffs have alleged fraud with particularity.

There can be no doubt that Plaintiffs' FAC meticulously details the actions of Defendants putting them on notice of the misconduct they are charged with in this matter. Indeed, Defendants only argument relating to the particularity of Plaintiffs' fraud allegations relates to the "who" element of fraud. However, Plaintiffs' have sufficiently alleged the "who" element of fraud for each Defendant.

As alleged in the FAC, Lemonis was the only natural person involved in the corporate governance of ML LLC. (FAC ¶¶ 22-25.) As such, those entities could only operate through Lemonis and his actions should be imputed onto them. *Estes v. City of New York*, 2006 WL 2299350, at *1 (E.D.N.Y. Apr. 11, 2006) (finding that a company's alter egos can impute liability onto the company) (citing *Niesig v. Team I*, 76 N.Y.2d 363, 374, (1990)); *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 302 (S.D.N.Y. 2019) ("[T]raditional agency principles impute a corporate agent's acts to the corporation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud.")

The FAC sets forth in painstaking detail the various misrepresentations that form the basis of Plaintiffs' fraud causes of action. These include statements by Machete and its employees, statements by Lemonis, and statements by Lemonis' representatives. (*See generally* FAC.) Thus, Plaintiffs have alleged the "who" element of fraud with particularity.

As to Plaintiffs' fraudulent concealment claim against Lemonis (FAC ¶¶ 225-33), Plaintiffs sufficiently plead all of the required elements. ML Defendants take issue with Plaintiffs' claim that Lemonis had a fiduciary duty to Plaintiffs. But under New York law, "a fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who

exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied." *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 503 (S.D.N.Y. 2011) (quoting *Daly v. Metropolitan Life Ins. Co.*, 4 Misc.3d 887, 782 N.Y.S.2d 530, 535 (Sup.Ct.N.Y.Co.1992)); *see also United States v. Chestman*, 947 F.2d 551, 568 (2d Cir.1991) (finding that a fiduciary duty arises if "confidence is reposed on one side and there is resulting superiority and influence on the other."). Here, despite the hesitation noted by ML Defendants, Plaintiffs reposed trust and confidence in Lemonis, allowing him full reign over Bowery Kitchen, the physical store, the inventory, and relied upon Lemonis for Plaintiffs' benefit due to his supposed superior expertise. (*See* FAC ¶¶ 68, 73-85.) Plaintiffs have sufficiently alleged a fiduciary relationship between Plaintiffs and Lemonis.

As to the ambiguity of "trust the process," this is fully explained in Plaintiffs' FAC. Whereas Plaintiffs could have considered it to mean the process of improving their business, the "process" Lemonis had in mind involved forcing Plaintiffs to become substantially indebted to Lemonis and ML Defendants, leaving the Plaintiffs to deal with the financial consequences of owning a store with no inventory, and to infringe on Plaintiffs' trademarks. (FAC ¶ 227.) At the pleading stage, Plaintiffs' allegations must be accepted as true and they must be viewed in the light most favorable to Plaintiffs. *Arar*, 585 F.3d at 567. Plaintiffs have sufficiently made their claim of fraudulent concealment against Lemonis.

### C. ML Defendants' actions give rise to a claim for deceptive practices in violation of GBL 349.

"A plaintiff challenging an act or practice under [NY GBL] section 349 must show that '(1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury.'" *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, 2015 WL 5008762, at *3 (S.D.N.Y. Aug. 24, 2015). Even

corporate competitors may bring a claim under Section 349, "so long as some harm to the public at large is at issue." *DO Denim, LLC v. Fried Denim, Inc.*, 634 F.Supp.2d 403, 408 (S.D.N.Y.2009).

Here, Plaintiffs allege that ML Defendants sold products to the public they were misleading because they wrongfully displayed Plaintiffs' trademark, and that Plaintiff was harmed. (FAC ¶¶ 199-202.) The public is demonstrably harmed in that they have been tricked into buying low-quality products based upon Plaintiffs' infringed trademark and Plaintiffs reputation for selling quality products. (FAC ¶ 111.) Plaintiffs, therefore, plead all of the required elements of GBL 349.

### D. Plaintiffs' properly allege tortious interference with business relations.

To allege a tortious interference with business relations (also referred to as a tortious interference with prospective economic advantage) under New York law, "a plaintiff must allege that: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Brown Media Corp. v. K & L Gates, LLP*, 586 B.R. 508, 529 (E.D.N.Y. 2018) (citing *Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).

Plaintiffs plead all of the required elements. First, Plaintiffs allege that they had existing business relationships with new and repeat customers. (FAC ¶ 255.) Next, they allege that ML Defendants and Camping World interfered with these relationships by engaging in wrongful, dishonest means, such as by infringing Bowery Kitchen's trademark and applying it to goods similar to that which Bowery Kitchen sold. (FAC ¶¶ 256-257, 259.) Finally, Plaintiffs allege that ML Defendants and Camping World harmed Plaintiffs' business relationship and reputation with its existing customers. (FAC ¶¶ 258-260.) Because Plaintiffs sufficiently plead the required

elements to state a claim for tortious interference with business relations, ML Defendants' motion to dismiss should be denied.

### E. Plaintiffs may plead unjust enrichment as an alternative claim.

ML Defendants claim that Plaintiffs' claim for unjust enrichment claim is not permitted because it is duplicative. That is not the case during the pleading stage. ML Defendants mistakenly rely on *Int'l Council of Shopping Ctrs., Inc. v. Global Infotech LLC* to claim that the Court should dismiss Plaintiffs' unjust enrichment claim, but the court there was deciding a default judgment. 2019 WL 2004096, at *4 (S.D.N.Y. May 7, 2019). Perhaps Plaintiffs would not be able to actually recover from the unjust recovery claim if such a recovery would be duplicative, but at this stage of the litigation Plaintiffs are free to plead alternative theories. *See Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 402 (S.D.N.Y. 2020) ("[A] party may also state as many separate claims . . . as it has, regardless of consistency." (citing Fed. R. Civ. P. 8(d)). Pleadings do not need to explicitly state that they are made in the alternative. *Id.* Rather, the Court may move forward with Plaintiffs' various theories of liability and narrow Plaintiffs' claims after discovery if it becomes necessary. *See id.* Therefore, ML Defendants' motion to dismiss should be denied as to Plaintiffs' unjust enrichment claim.

## V. PLAINTIFFS' PLEAD THEIR CIVIL RICO CLAIM WITH REQUISITE PARTICULARITY.

Plaintiffs have properly alleged civil RICO against all Defendants. Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate . . . the provisions of subsection . . . (c)." 18 U.S.C. § 1962(d). "When

§ 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F.Supp.2d 225, 236 (E.D.N.Y.2010) (citing 18 U.S.C. § 1964(c)). Specifically, RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "From this language, courts have extracted the conditions a plaintiff must meet to satisfy RICO's standing requirements: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir. 1994).

Although civil RICO presents many hurdles for a plaintiff to overcome, the Supreme Court has also "made clear that it would not interpret civil RICO narrowly." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 139 n.6 (2d Cir.2001) *citing Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985).

### A. Plaintiffs exceed legal requirements for establishing enterprise.

Defendants' argue that Plaintiffs cannot allege an "enterprise" because the Defendants are one "unified corporate structure." As an initial matter, this argument fails as to Defendant Lemonis. As a natural person, he is legally district from the corporate defendants. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that."); *Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 780 (S.D.N.Y. 2016) (holding that even if the corporate entity were an "improper defendant, that would not change the fact that Plaintiffs raised a proper RICO claim against the individual and sole officer of the entity."). *Cedric* is particularly instructive. In *Credric*, the Supreme Court found that a

natural person, who was the president and sole shareholder of a closely held corporation, combined with that closely held corporation itself were two separate entities and sufficiently formed an "enterprise" for purposes of the RICO claim. 533 U.S. at 160.

Moreover, the enterprise alleged by Plaintiffs consists of more than the corporate amalgamation of Lemonis' limited liability companies. For instance, it includes ML Defendants' employees and other agents, Machete, and its employees and other agents, and Camping World, with its employees and other agents. (FAC ¶ 279.)  Indeed, "a defendant may be a RICO 'person' and one of a number of members of the RICO 'enterprise.'" *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).  There need not be "complete overlap of RICO persons and RICO enterprises.  Rather, the core question is whether the RICO enterprise is distinct from each of the RICO persons, in which case it satisfies the distinctness requirement or if the RICO enterprise is deemed associated with itself, which is not permissible."  *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 454 (S.D.N.Y. 2018).

The FAC's allegations of alter ego do not doom Plaintiffs' RICO claims.  Indeed, a complaint may allege that parties are alter egos and district entities under RICO. *Moses v. Martin*, 360 F. Supp. 2d 533, 546–47 (S.D.N.Y. 2004) (declining to dismiss RICO claims where the plaintiff alleged the two defendants were alter egos, stating such pleading "however, does not preclude plaintiff from pleading both theories, even though they are mutually exclusive. Under Rule 8(d)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency.").

Further, while Machete, may be the agent of the ML Defendants, it does not exist solely to further the ML Defendants' businesses. Thus, this is not a situation where Machete is only carrying

out the "regular affairs of" the ML Defendants operating a single corporate structure. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).

**B. Plaintiffs properly plead predicate criminal acts to justify RICO.**

The FAC has also properly alleged the pattern of racketeering activity of mail fraud and wire fraud. To state a claim for mail and wire fraud, a plaintiff must allege: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme." *Chanayil v. Gulati,* 169 F.3d 168, 170–71 (2d Cir.1999). In short, a RICO complaint must provide "a detailed description of the underlying [fraudulent] scheme and the connection of the mail and/or wire communications to the scheme." *In re Sumitomo Copper Litig.,* 995 F.Supp. 451, 456 (S.D.N.Y.1998).

Further, to prove mail or wire fraud, "it is not necessary to show that [defendants] actually mailed [or wired] . . . anything themselves." *Pereira v. United States,* 347 U.S. 1, 8 (1954). Instead, "it is sufficient if [defendants] caused it to be done." *Id.* Moreover, "where the mails or wires are used in furtherance of fraud, the communications need not contain false or misleading information themselves." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 479 (S.D.N.Y. 2015); *see Schmuck v. United States,* 489 U.S. 705, 715 (1989) ("It is sufficient for the mailing [or transmission] to be incident to an essential part of the scheme or a step in the plot."). In order "to prove a violation of 18 U.S.C. § 1341, one need only show that a defendant was one of the participants in a scheme to defraud, and that the mails were used in furtherance of that scheme." *Martin*, 137 F. Supp. 3d at 479.

Here, the FAC includes allegations which make clear that Defendants used mails, wires, and television in furtherance of their fraudulent scheme. The FAC alleges that the Lemonis Enterprise used the wires as part of the Lemonis Enterprises' scheme to defraud small businesses

and take their assets, goodwill, and established business relationships for themselves. The FAC also discusses several other transactions involving the communications made via mails, wires, and television that were conducted in furtherance of the Lemonis Enterprises' scheme. (*e.g., Id.* ¶¶ 55-64, 94-104.) Plaintiffs also state facts sufficient to infer that ML Defendants and CWI, Inc. shipped products illegally containing Plaintiffs' trademark, records of which would be uniquely in ML Defendants' and CWI, Inc.'s possession.[2]

Additionally, the FAC alleges that the Lemonis Enterprise consistently maintained a website and ran advertising which contained false misrepresentations the Lemonis helped small businesses that appeared on the show when in reality the Lemonis Defendants were dismantling them for their own benefit. (FAC ¶ 283.)

Plaintiffs also detail the misrepresentations that Machete made to them via telephone and Skype in the spring of 2016. These are specific misrepresentations that Lemonis would actually help their business, that the deals reached on the show are real, and that businesses that had appeared on the show are thriving. (*Id.* ¶¶ 47-64, 285.) Thus, there is not merely one well plead allegation of mail and wire fraud. Instead, Plaintiffs FAC includes several allegations that make clear that the Lemonis Enterprise used the mail, wire, and television in furtherance of their fraudulent scheme to defraud and take over small businesses.

## VI.   PLAINTIFFS' CLAIM FOR DECLARATORY JUDGMENT PLEADS A LIVE CONTROVERSY TO BE RESOLVED BY THE COURT.

"The purpose of declaratory relief is to relieve litigants from the ongoing or imminent harm they may suffer when their rights vis-à-vis each other are uncertain." *Parker v. Citizen's Bank, N.A.*, 2019 WL 5569680, at *4 (S.D.N.Y. Oct. 29, 2019) (citing *United States v. Doherty*, 786 F.2d

---

[2]         Mail fraud may be found where mailings are "sent or delivered by any private or commercial interstate carrier." 18 U.S.C.A. § 1341.

491, 498 (2d Cir. 1986)). The Declaratory Judgement Act permits declaratory relief in cases presenting "actual controvers[ies]," *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) (citing 28 U.S.C. § 2201(a)). To establish subject matter jurisdiction over a declaratory judgment action, "there must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* In the Second Circuit, courts should consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

There is no doubt that there is a live controversy between Plaintiffs and ML Defendants. Plaintiffs allege that ML Defendants and Camping World continue to infringe upon Plaintiffs' trademark, causing financial and reputational harm. (*e.g.,* FAC ¶ 117.) Plaintiffs further allege that trademark infringement has been ongoing since 2017. (FAC ¶ 105.) ML Defendants respond by claiming there is a valid agreement—something that Plaintiffs dispute. Whether there is an ongoing business relationship is irrelevant when ML Defendants claim they have rights to Plaintiffs' intellectual property due to a valid agreement, and Plaintiffs disagree. (*See* Dkt. 40, pp. 9-10.) Plaintiffs have a right to know whether there is a binding agreement between them and ML Defendants. Such a judgment would serve to both clarify the legal issues involved and offer relief from uncertainty. ML Defendants' motion to dismiss Plaintiffs' declaratory judgment claim must be denied.

## LEAVE TO AMEND

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a liberal standard and "is

consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Thus, leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

None of ML Defendants' arguments against allowing leave to amend hold water. ML Defendants essentially reiterate their earlier arguments against Plaintiffs' claims, and despite ML Defendants' claims to the contrary, any deficiencies could be amended. ML Defendants have not proven, as a matter of law, that Plaintiffs and ML Defendants entered into a binding agreement, which is a prerequisite for their remaining arguments. On the contrary, Plaintiffs have shown that there is enough to justify proceeding to the discovery phase, and they should be allowed to do so.

As a final note, ML Defendants have not pointed to any case law limiting a plaintiff to only one amendment of its claims. As ML Defendants point out, the factual background is complicated and demand detail. (*See* Dkt. 40, p. 24.) This is not the situation where Plaintiffs have had multiple opportunities to amend or guidance from the Court on any potential issues with their claims. As such, Plaintiffs' previous amendment of the complaint should not prevent them from further amendments. Again, Rule 15 requires that leave to amend be freely given. Thus, to the extent the Court finds merit in Defendants' motion, Plaintiffs should be granted leave to amend.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Machete's motion in its entirety, and to the extent the Court grants any portion of Machete's motion, Plaintiffs request leave to amend.

Dated: January 13, 2021                    Gerard Fox Law P.C.

_____

Gerard P. Fox (*pro hac vice* forthcoming)
Maja Lukic (SBN 4888038)
1345 Sixth Avenue, 33rd Floor
New York, New York 10105
Telephone: (646) 690-4980
Facsimile: (646) 368-9328
gfox@gerardfoxlaw.com
mlukic@gerardfoxlaw.com